No. 01-473

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 134

PRO-HAND SERVICES TRUST,
an Irrevocable Trust,

      Plaintiff and Respondent,

    v.

DAVID MONTHEI and MARY GABRIEL-DUNCAN,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

      For Respondent:

            J. David Penwell, Attorney at Law, Bozeman, Montana

                     Submitted on Briefs:  November 29, 2001

                             Decided:    June  18,  2002

Filed:

_____
                         Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Mary Gabriel-Duncan ("Duncan") appeals from the March 13, 2001, Order entered by the Montana Eighteenth Judicial District Court, Gallatin County, denying her motion to disqualify David J. Penwell ("Penwell"), attorney for Pro-Hand Services Trust ("Pro-Hand"). We affirm.

¶2 The following issue is presented on appeal:

¶3 Did the District Court err in denying Duncan's motion to disqualify Penwell?

BACKGROUND

¶4 On or about April 9 and April 10, 1998, Duncan called Penwell's office and spoke with Marion Austin ("Austin"), Penwell's legal secretary at the time. Duncan inquired into hiring Penwell as counsel in this action. Austin informed Duncan that Penwell was planning to close his office, was not accepting new cases, and referred her to contact Parker Leach, another attorney in the building. Duncan never personally spoke to Penwell pertaining to hiring him as counsel.

¶5 Pro-Hand, represented by other counsel, initiated this action against Duncan and David Monthei for breach of contract in the District Court on February 25, 1999. Pro-Hand then substituted attorneys and Penwell entered his appearance on Pro-Hand's behalf on February 24, 2000.

¶6 On July 18, 2000, Duncan filed a motion to disqualify Penwell as counsel for Pro-Hand. A pretrial conference was held on July 19, 2000, wherein the parties agreed to conduct depositions

2

regarding the allegations stated in Duncan's motion. Subsequently, Duncan filed a brief in support of her motion to disqualify Penwell on October 2, 2000. Therein, Duncan alleged that she disclosed confidential information concerning this case to Austin during their phone conversations and such information was thereby imputed to Penwell creating an attorney-client relationship between herself and Penwell.

¶7 The District Court heard the motion on March 6, 2001. Thereafter, the court denied the motion in its March 13, 2001, Order concluding that Duncan failed to meet her burden "in conclusively establishing the existence of an attorney-client relationship between herself and Penwell."

¶8 Duncan filed a motion to certify the District Court's March 13, 2001, Order as final for purposes of appeal pursuant to Rule 54(b), M.R.Civ.P., on March 19, 2001. On April 30, 2001, the District Court certified its March 13, 2001, Order in accordance with Rule 54(b), M.R.Civ.P. Duncan filed a notice of appeal in the District Court on May 22, 2001.

STANDARD OF REVIEW

¶9 The denial of a motion to disqualify an attorney is within a district court's discretionary powers. *See Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, ¶ 26, 16 P.3d 1002, ¶ 26 (citing *In re Guardianship of Mowrer*, 1999 MT 73, ¶ 24, 294 Mont. 35, ¶ 24, 979 P.2d 156, ¶ 24). Therefore, we will review such decision for an abuse of discretion. *See Schuff*, ¶ 26.

DISCUSSION

3

¶10  Did the District Court err in denying Duncan's motion to disqualify Penwell?

¶11     Relying upon *In re Johore Investment Co., Inc.* (D. Hawaii 1985), 157 B.R. 671, and *Westinghouse Electric Corp. v. Kerr-McGee Corp.* (7th Cir. 1978), 580 F.2d 1311, 1319, *cert. denied* (1978), 439 U.S. 955, Duncan asserts that an implied attorney-client relationship may arise when prospective clients divulge confidential information during consultation with an attorney for the purpose of retaining the attorney in his or her professional capacity as a legal advisor, even if actual employment does not result.  Duncan alleges that such an implied attorney-client relationship was formed between herself and Penwell when she disclosed confidential information to Austin during their phone conversation on April 9, 1998, for purposes of hiring Penwell as legal counsel in this matter.  Duncan further asserts, citing *In re Rules of Professional Conduct and Insurer Imposed Billing Rules and Procedures*, 2000 MT 110, 299 Mont. 321, 2 P.3d 806, that the confidential information she disclosed to Austin was imputed to Penwell.  Duncan therefore contends Penwell's representation of Pro-Hand in this matter is a conflict of interest in violation of the Montana Rules of Professional Conduct requiring Penwell's disqualification.

¶12  In response, Penwell asserts that an attorney-client relationship was never established between himself and Duncan since Duncan did not disclose confidential information to Austin during their phone conversations on April 9 or April 10, 1998.  Instead,

4

Penwell insists that Duncan merely provided Austin with "basic" information, such as her name, telephone number, and that she wished to file a counterclaim. Penwell contends Austin informed Duncan during both phone conversations that he was closing his office and referred her to contact another attorney. Penwell thus claims that disclosure of confidential information cannot be imputed to him as such disclosure was never made. Moreover, Penwell points out that he never personally spoke or met with Duncan.

¶13 We have held that a lawyer may be disqualified from appearing in an action because he or she has previously represented an adverse party. *See Mowrer*, ¶ 20. Rule 1.9 of the Montana Rules of Professional Conduct states:

> **Conflict of Interest: Former Client.** A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Accordingly, we must determine if an attorney-client relationship was formed between Duncan and Penwell. If an attorney-client relationship was not formed, there is no conflict of interest.

¶14 An implied attorney-client relationship may result when a prospective client divulges confidential information during a consultation with an attorney for the purpose of retaining the

5

attorney, even if actual employment does not result. *See Westinghouse*, 580 F.2d at 1319. *Also see Johore*, 157 B.R. at 676.

In determining whether an implied attorney-client relationship exists, we will examine whether the alleged client reasonably believed that such relationship was formed. *See Mowrer*, ¶ 21.

¶15   In determining whether an attorney should be disqualified, the Ninth Circuit focuses on whether there is a "reasonable probability" that confidences were disclosed. *See Trone v. Smith* (9th Cir. 1980), 621 F.2d 994, 998.   The Ninth Circuit stated:

> [T]he underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought.   The test does not require the former client to show that actual confidences were disclosed.   That inquiry would be improper as requiring the very disclosure the rule is intended to protect.

*Trone*, 621 F.2d at 999 (citation omitted).

¶16   Consequently, we hold that an alleged client should not be required, at a disqualification hearing, to reveal actual confidences that he or she maintains were disclosed to establish an attorney-client relationship.   Such a procedure would violate the very disclosure the rule is designed to protect.   However, simply making a representation to the court that confidential information was disclosed offers nothing to assist the court in making a reasoned judgment.   The alleged client must at least inform the court of the nature of the confidential information disclosed.   For example, the alleged client can testify that she informed the prospective counsel of the nature of the transaction, her position

6

regarding the claim or defense, witnesses who support or oppose her claim, the nature and amount of any damages suffered and other relevant personal information. This type of testimony, without getting specific, would alert the court of the possibility that confidential information had been previously disclosed.

¶17 Here, Duncan testified that she disclosed confidential information to Austin during their telephone conversation on April 9, 1998, and was then told that Penwell would not represent her. In contrast, Austin states that Duncan provided only "basic" information, such as her name and phone number. Further, Austin asserts that she advised Duncan to contact another attorney since Penwell was closing his office and was not accepting new cases. At no time in her testimony, however, did Duncan ever alert the court of the type of confidential information she allegedly disclosed to Austin, but relied on her conclusory statement that what she disclosed was confidential. Faced with the dilemma, the District Court resolved the matter in favor of Penwell, determining that Duncan "failed to provide the Court with anymore than the conclusory statement that she provided 'confidential' information." Accordingly, we conclude that the District Court did not abuse its discretion in determining that Duncan "failed to meet her burden in conclusively establishing the existence of an attorney-client relationship between herself and Penwell."

¶18 Additionally, based upon the circumstances presented in this case, we conclude that Duncan could not have reasonably believed that an attorney-client relationship was formed between herself and

Penwell. Duncan had two telephone conversations with a legal secretary which form the basis of her claim. She never personally spoke or met with attorney Penwell and was advised that Penwell could not take her case.

¶19 Finally, we have advised alleged clients of their duty to alert the trial court of conflict of interest problems "as early as possible so that a determination may be made that does not unduly prejudice any party." *See Mowrer*, ¶ 23. Here, Penwell filed a notice of entry of appearance on behalf of Pro-Hand on February 24, 2000. Thereafter, Duncan litigated the action without mention of the alleged conflict. She filed a motion for summary judgment on March 14, 2000. Subsequently, she filed her lay and expert witness disclosure as well as exhibit list on May 15, 2000. On May 23, 2000, the court held a hearing on Duncan's motion for summary judgment. It was not until July 18, 2000, some five months after Penwell entered his appearance, that Duncan filed her motion to disqualify.

¶20 With the facts presented, we conclude that the District Court did not abuse its discretion in denying Duncan's motion to disqualify Penwell.

¶21 Affirmed.

/S/ JIM REGNIER

We Concur:


/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER

8

/S/ JIM RICE