575 S.E.2d 864

STATE of West Virginia ex rel. Denver A. YOUNGBLOOD, Jr., Petitioner,

v.

Honorable David H. SANDERS, Judge of the Circuit Court of Morgan County, Respondent.

No. 30785.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Nov. 27, 2002.

Concurring Opinion of Justice Davis Dec. 5, 2002.

Robert C. Stone, Jr., Martinsburg, for the Petitioner.

Stephen M. Kenney, Special Prosecuting Attorney, South Charleston, Debra M.H. McLaughlin, Prosecuting Attorney, Berkeley Springs, for the Respondent.

ALBRIGHT, Justice.

Petitioner Denver A. Youngblood, Jr., seeks a writ of prohibition to prevent the Circuit Court of Morgan County from enforcing its order entered on August 16, 2002, disqualifying Robert C. Stone from serving as his counsel. As grounds for the disqualification, the trial court cited Mr. Stone's access to allegedly confidential information that was transmitted by the wife of Mr. Youngblood's co-defendant, Michael Fleece, in a consultation between Mrs. Fleece and a paralegal employed by Mr. Stone. Upon our review of this matter, we determine that the entirety of the factual information related to the crime that was discussed by Mrs. Fleece is separately contained in other statements provided to the police by both Mr. and Mrs. Fleece. Accordingly, we find no basis for disqualification of Mr. Stone and, thus, determine that a writ of prohibition shall issue with regard to enforcement of the trial court's order disqualifying Mr. Stone from continued representation of Mr. Youngblood.

## I. Factual and Procedural Background

On February 27, 2001, eighteen-year-old Jessica Miller died of a heroin overdose. In connection with that death, Petitioner Youngblood and Mr. Fleece were indicted for felony murder, possession with intent to deliver a controlled substance, and delivery of a controlled substance.

Initial counsel appointed to represent Petitioner Youngblood was required to withdraw due to his prior representation of a witness in the case. A second attorney was then appointed, but his representation of Mr. Youngblood ceased when Mr. Youngblood's family hired Mr. Stone on June 24, 2002. Two days later, Mr. Fleece entered into a

plea agreement whereby he plead guilty to voluntary manslaughter and agreed to testify against Mr. Youngblood under the terms of the agreement.

On July 19, 2002, the State filed a motion to disqualify Mr. Stone from representing Mr. Youngblood based on a meeting that took place on September 6, 2001, between Mrs. Fleece and Steven Askin, a paralegal employed by Mr. Stone. This meeting, which lasted for thirty minutes to an hour, was for the purpose of exploring Mr. Stone's representation of Mr. Fleece. In its motion, the State alleged that Mrs. "Fleece told personal and confidential facts regarding her husband Michael Fleece and his involvement in the death of Jessica Miller." Due to financial reasons, Mr. Stone was not hired by the Fleeces.

Two hearings were held by Judge Sanders on the State's motion to disqualify.[1] During these hearings, the trial court was apprised of the fact that Mr. Askin had prepared a memorandum of his meeting with Mrs. Fleece.[2] That two-page memorandum was lodged with the court and placed under seal.

By order entered on August 16, 2002, the circuit court granted the State's motion for disqualification. Recognizing that "[i]t is not necessary that an attorney be formally retained for the Attorney Client Privilege to attach," the trial court examined whether confidential information was communicated to Mr. Stone.[3] In considering whether confidential information was communicated during the September 2001 meeting, the trial court reviewed the testimony of Mr. Askin and Mrs. Fleece upon this issue. The circuit court found that Mr. Askin testified that "nothing of substance was divulged." Mrs. Fleece, according to the trial court, "gives only the bare assertion that confidential information regarding the case was provided." Focusing on the contents of the inter-office memorandum prepared by Mr. Askin, the trial court concluded that "considerable material information [was] conveyed to Mr. Askin," and that Mr. Stone was disqualified based on the existence of a conflict between his duty to zealously represent Mr. Youngblood and his duty to protect the confidentiality of the statements made by Mrs. Fleece to Mr. Askin.

Arguing that the trial court erred in its determination that confidential communications had been disclosed which required disqualification under the rules of professional conduct,[4] the Petitioner seeks the issuance of a writ of prohibition to prevent enforcement of the trial court's order disqualifying his counsel of choice.

## II. Standard of Review

■ This Court's standard for issuing writs of prohibition stemming from allegations that the lower court exceeded its authority is set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ

---

1. The first of these hearings was held on July 26, 2002, and the second hearing was held on August 2, 2002.

2. The memorandum was dictated while in the presence of Mrs. Fleece.

3. During oral argument of this matter, Mr. Stone indicated that, upon the State's filing of the motion to disqualify, he read the memorandum that Mr. Askin dictated contemporaneous to his meeting with Mrs. Fleece.

4. *See* W.Va.R.Prof.Conduct 1.8; 1.9.

of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With regard to the specific use of writs of prohibition in connection with disqualification motions, we recently recognized in *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001), that

> the Court has consistently found that a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge such ruling by way of a petition for a writ of prohibition. *See State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993) (recognizing that a challenge to a circuit court's ruling on a motion to disqualify is appropriately brought through a petition for prohibition); *see also State ex rel. DeFrances v. Bedell*, 191 W.Va. 513, 516, 446 S.E.2d 906, 909 (1994) (per curiam); *Farber v. Douglas*, 178 W.Va. 491, 493, 361 S.E.2d 456, 458 (1985); *State ex rel. Taylor Assoc. v. Nuzum*, 175 W.Va. 19, 23, 330 S.E.2d 677, 682 (1985); *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978).

210 W.Va. at 311, 557 S.E.2d at 365.

With these principles in mind, we proceed to determine whether a writ of prohibition should be issued under the facts of this case.

### III. Discussion

Petitioner Youngblood argues that by disqualifying Mr. Stone from serving as his defense counsel, the State has violated his Sixth Amendment right to counsel.[5] While this right to counsel is not absolute, it has been observed that:

> This constitutional guarantee generally ensures that a criminal defendant may be

represented by any counsel who will agree to take his case. Although "[a] defendant's right to counsel of his choice is not an absolute one," *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir.1979), *we have consistently recognized that the right of a defendant who retains counsel to be represented by that counsel is " 'a right of constitutional dimension.' "* *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir. 1973), (*quoting United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969) (emphasis added)).

*Commonwealth v. Cassidy*, 390 Pa.Super. 359, 568 A.2d 693, 698 (Pa.Super.1989).

Acknowledging certain limitations on the right to counsel of choice,[6] Petitioner recognizes that trial courts have a duty to determine that no conflict of interest exists with regard to defense counsel's representation of a criminal defendant. *See United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982) (recognizing that Sixth Amendment guarantee of assistance of counsel "includes the 'right to "the assistance of an attorney unhindered by a conflict of interest' " ") (*quoting Cuyler v. Sullivan*, 446 U.S. 335, 355, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and *Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). The law is clear that potential conflicts of interest are raised when an attorney undertakes to represent an individual charged with the same crime for which he or she has represented or is representing a co-defendant.[7] This assumption of conflict in the instance of successive representation arises based on the concern that "privileged information obtained from the former client might be relevant to cross-examination" and thereby affect the attorney's advocacy.[8] *Agosto*,

---

5. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

6. *See generally Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (recognizing bar on representation by individual not admitted to legal profession; by attorney whom defendant cannot afford; by attorney who declines to assume representation; and by attor-

ney having prior or current relationship with opposing party).

7. Provided that there is a showing that the second client's interests are "materially adverse" to the interests of the former client, a conflict is presumed to exist under Rule 1.9 of the Rules of Professional Conduct.

8. The concern is two-pronged: "(a) the attorney may be tempted to use that confidential information to impeach the former client; or (b) counsel

675 F.2d at 971; *see also* Syl. Pt. 2, *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993) (holding that "Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents after consultation"). Petitioner contends that we are without controlling authority, however, concerning the issue presented by this case: whether disqualification is required when prospective counsel was not hired by one co-defendant following consultation, but later hired by the other co-defendant.

In the case of *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994), this Court briefly addressed the issue of whether communications made by a prospective client could preclude the attorney's law firm from subsequent representation of another individual based on the presumed conflict that arose from the presumed sharing of confidences. *See* Syl. Pt. 4, *McClanahan,* 189 W.Va. at 291, 430 S.E.2d at 570 (holding that once former client establishes attorney is representing individual in substantially related matter, presumption exists that former client divulged confidential information to attorney). We rejected the argument that counsel should be disqualified based on the mere appearance of conflict where the extent of the consultation meeting was a discussion of the general subject of estate law and taxation without any specific application of those laws to the prospective client's situation. We declined to expand the assumption that confidential information is disclosed during the course of actual representation to instances of prospective representation where the facts were limited to "a remote, isolated, non-productive meeting" and the attorney submitted an affidavit indicating that no confidential information was disclosed during that one meeting.[9] *Bedell,* 191 W.Va. at 518, 446 S.E.2d at 911. Based on the absence of an attorney-client relationship and

the non-disclosure of confidential information, we concluded that the attorney's law firm was not precluded from representation under those specific facts. *Id.*

Recently, in *State ex rel. Ogden Newspapers, Inc. v. Wilkes* ("*Ogden II*"), 211 W.Va. 423, 566 S.E.2d 560 (2002), we identified a critical factor that must be examined in connection with determining whether alleged confidential disclosures require disqualification. In discussing the issue of whether matters are substantially related for purposes of determining whether a conflict precluded representation, we observed:

> We recently added further definition to the substantial relationship test in syllabus point one of *State ex rel. Keenan v. Hatcher,* 210 W.Va. 307, 557 S.E.2d 361 (2001), when we adopted the approach taken in § 132 Restatement (Third) of the Law Governing Lawyers and said that two matters are substantially related under Rule 1.9(a) if "there is a substantial risk that representation of the present client will involve the use of [confidential] information acquired in the course of representing the former client, *unless that information has become generally known.*" The express language of section (b) of Rule 1.9 likewise acknowledges that *information which is or becomes commonly known lies outside the parameters of confidential information* and may be used against a former client in subsequent actions.

211 W.Va. at 426–27, 566 S.E.2d at 563–64 (emphasis supplied). Thus, when the confidential information at issue has been disclosed to other individuals, a conflict requiring disqualification cannot arise based on such "generally known" information. *See State ex rel. Ogden Newspapers, Inc. v. Wilkes* ("*Ogden I*"), 198 W.Va. 587, 590, 482 S.E.2d 204, 207 (1996) (discussing rationale underlying Professional Conduct Rule 1.9 and foundational underpinnings of attorney-client relationship); *see also United States v. Johnson,* 131 F.Supp.2d 1088, 1096–99 (N.D.Iowa 2001) (discussing distinction rec-

---

may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." *Agosto,* 675 F.2d at 971.

9. Evidence as to confidential communications was limited to the attorney under challenge since the prospective client was deceased.

ognized by U.S. Supreme Court between disclosure of underlying facts and waiver of attorney-client privilege concerning communications).

■ In arguing that disqualification is improper under the facts of this case, Petitioners rely on the absence of any attorney-client relationship between Mr. Stone and Mr. Fleece; the lack of any confidential information being transmitted during the consultation between Mrs. Fleece and Mr. Stone's paralegal;[10] and the fact that the factual information contained in the internal memorandum prepared by the paralegal qualifies as "generally known" information. Petitioner argues that the limited factual information set forth in the internal memorandum is the same information that had been provided by both Mr. and Mrs. Fleece in multiple written and transcribed oral statements given to the police. Accordingly, the State cannot demonstrate that disqualification is required based on the existence of a conflict or due to Mr. Stone's inability to zealously represent Mr. Youngblood pursuant to the ethical requirements of the Rules of Professional Conduct.

Worthy of comment is the fact that the lower court never made a finding that the subject communications between Mrs. Fleece and Mr. Askin contained confidential information. Instead, the trial court observed that the internal memorandum reflected that "considerable material information [was] conveyed" and that "immediate action was advised." Viewing its decision on disqualification as dependent on whether anything of substance was discussed during the meeting between Mrs. Fleece and Mr. Askin, the trial court opined during the August 2, 2002, hearing:

> Here the memo gives all of the indicia of a jump start and actual steps in representation, recommendations, assessment of the strengths of the case, steps to be taken, and the Court can't construe what we have seen as something that is as slight or as passing or as something which is nonsub-

stantive as those cases which find an attorney may continue in representation after this type of communication is shared.

In its order of August 16, 2002, the circuit court concluded that disqualification was required because it "cannot construe the statements as slight or passing and without substance."

While the nature of the conversation is certainly a factor to be considered in making the determination of whether a conflict exists which necessitates disqualification, the objective of the court's inquiry in this case was to determine whether any confidential communications were shared by Mrs. Fleece with Mr. Askin. As we noted in *Ogden II*, it is "the reviewing courts responsibility to weigh and balance carefully all relevant factors in order to guard against the risk of disclosure of confidential information when addressing qualification issues." 211 W.Va. at 428, 566 S.E.2d at 565. In deciding that disqualification was required in this case, the trial court appears to have placed undue emphasis on the dictated remarks that Mr. Askin made while in the presence of Mrs. Fleece as to whether the case was a felony murder case; his instructions to Mrs. Fleece regarding preparation of written factual accounts of the events surrounding the death of Miss Miller; and the need to get character witnesses. All of this generalized discussion, which would necessarily take place in any client consultation involving prospective representation of a criminal defendant, has absolutely no bearing on whether confidential information related to the crime was provided by Mrs. Fleece to Mr. Askin. For the trial court to inferentially conclude that confidential information was discussed, based solely on a generalized discussion that included such basic matters as fees; arranging for bail; the setting of a trial date; and the possible need for forensic experts, was improper when viewed against the entirety of the record.

The trial court should have examined the factual statements that Mrs. Fleece made to Mr. Askin related to her husband's involve-

---

10. Under recognized principles of agency, confidential communications made by Mr. Fleece's wife would still be entitled to protection under the attorney-client privilege. *See Holstein v.*

*Grossman*, 246 Ill.App.3d 719, 186 Ill.Dec. 592, 616 N.E.2d 1224, 1240 (Ill.App.1993) (recognizing that attorney-client relationship can be established by third party).

ment in the crime against those statements already provided to the police to determine if there was any information that had not previously been included in the prior statements. If she had provided distinct factual information that had not been disclosed to the police previously, then arguably the issue of a potential conflict between Mr. Stone's representation of Mr. Youngblood would be raised. Upon our review of the various oral and written statements made by Mrs. Fleece and Mr. Fleece against the factual statements included in the internal memorandum prepared by Mr. Askin, we can discern no information that had not previously been related to the police. Because the information that Mrs. Fleece related to Mr. Askin regarding her husband's involvement with Miss Miller's death is also contained in several police reports, that information clearly qualifies as "generally known" under the recognized exception to Rule 1.9 of the Rules of Professional Conduct. W.Va.R.Prof.Conduct 1.9(b).

■ While most conflict of interest issues in the criminal context are raised post-conviction, when an issue of disqualification based on conflict is raised pre-trial, the trial court must balance "individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness." *Agosto,* 675 F.2d at 970 (*quoting United States v. Garcia,* 517 F.2d 272, 273 (5th Cir.1975)). When disqualification is raised pretrial, "there is of necessity less certainty as to whether conflicts will actually arise and as to the nature of those conflicts." *Agosto,* 675 F.2d at 970; *accord Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692 (observing that "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials"). Accordingly, "the standards applicable to making that assessment [potential for conflict] must be flexible." *Agosto,* 675 F.2d at 970.

■ Given the lack of rulings in this area of the law, we hold today that where an attorney has received confidential information from a prospective client, the attorney may be disqualified from representing another individual on grounds of actual or presumed conflict,[11] despite the absence of an actual attorney-client relationship. However, before disqualification of counsel can be ordered on grounds of conflict arising from confidences presumably disclosed in the course of discussions regarding a prospective attorney-client relationship, the court must satisfy itself from a review of the available evidence, including affidavits and testimony of affected individuals, that confidential information was discussed. When the information that is the subject of a disqualification motion predicated on prospective representation was "generally known" or otherwise disclosed to individuals other than prospective counsel, the information cannot serve as a basis for disqualification under Rule 1.9 of the Rules of Professional Conduct.

■ We recognize that when disqualification of counsel is raised in the criminal context, the issue must be resolved with careful concern for the defendant's right to assistance of counsel guaranteed under our federal and state constitutions.[12] Intrinsic to the assistance of counsel right guaranteed to criminal defendants is the principle firmly rooted in this country's system of jurisprudence that the trial process must be fundamentally fair. The often difficult task of identifying conflicts of interest, especially at the pre-trial stage of the proceedings, compels us to adopt a flexible approach to gauging the existence of or possibility for such conflicts. When presented with a disqualification motion involving communications between an individual and prospective counsel, trial courts must carefully examine all relevant evidence which bears on the pivotal issue of whether confidential informa-

---

11. *See United States v. Register,* 182 F.3d 820, 829–30 (11th Cir.1999) (recognizing that direct evidence of actual conflict of interest is not required to disqualify defense counsel in criminal case and stating that trial court should consider whether there has been a " 'showing of a serious potential for conflict' ") (*quoting Wheat v. United*

*States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)); *accord Johnson,* 131 F.Supp.2d at 1096; *Cassidy,* 568 A.2d at 698.

12. *See* U.S. Const. amend. VI; W.Va. Const. art. III, § 14.

tion has been disclosed that would impinge upon the attorney's right to zealously represent the current client or his duty to protect the confidences of the prospective client. Trial courts must also recognize that "[i]n the criminal context, disqualification on the basis of the attorney's receipt of privileged information from a codefendant formerly represented by that attorney should only be considered upon a clear showing that the present and former clients' interests are adverse." *Agosto,* 675 F.2d at 973.

Borrowing from Justice Thurgood Marshall's comments in his dissent to *Wheat,*[13] the Pennsylvania court in *Cassidy* articulated that:

> When a defendant's selection of counsel, under the particular facts and circumstances of a case, places the fairness and integrity of the defendant's trial in jeopardy, the defendant's right to counsel of choice may be justifiably denied. However, a *presumption* must first be recognized in favor of the defendant's counsel of choice; to overcome that presumption, there must be a demonstration of an *actual conflict or a showing of a serious potential for conflict....* The right to counsel of choice "should not be interfered with in cases where the potential conflicts of interest are highly speculative...." *United States v. Flanagan,* 679 F.2d 1072, 1076 (3rd Cir.1982), *rev'd on different grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

568 A.2d at 698 (emphasis in original and citations omitted). In clear recognition of the presumption in favor of defendant's selected counsel, "[c]ourts generally give substantial weight to defense counsel's representations regarding conflicts of interest." *Agosto,* 675 F.2d at 972.

Applying the principles we announce here today to the case *sub judice,* we do not find that the presumption in favor of Petitioner's choice of counsel has been overcome by a sufficient showing of potential conflict. Be-

cause the information tendered to Mr. Askin by Mrs. Fleece is contained in an independent source—the police reports, the factual information qualifies as "generally known" information which is outside the protections of Rule 1.9 of the Rules of Professional Conduct. Based on the information submitted in support of the alleged conflict, we cannot conclude that the fairness and integrity of the trial process will be affected by permitting Mr. Stone to represent the Petitioner. Absent the necessary showing of potential conflict, we cannot deny to Petitioner his right to counsel of his choice. Accordingly, we find that Petitioner is entitled to a writ of prohibition to prevent the lower court from enforcing its disqualification order.

The cautionary remarks that we first announced in *Ogden II* are equally valid here:

> We stress that the result we have reached in this case should in no way be read as an erosion of this Court's resolve to shield the attorney-client relationship. We have simply recognized that a court faced with a Rule 1.9 motion must consider all relevant factors on a case-by-case basis in order to decide whether disqualification is warranted and that one such factor may be the amount of time which has passed since the former representation occurred. In some instances, no amount of time will remove the subsequent representation prohibition. A lawyer's formidable ethical responsibility of protecting the attorney-client relationship in a manner which steadfastly guards against improper disclosure, misapplication or misuse of protected information obtained from a former client remains unaltered. The frank and honest discourse which is the hallmark of the attorney-client relationship can be preserved only if lawyers are faithful to selecting cases in a prudent and judicious manner so as to protect the best interests of all clients.

211 W.Va. at 430, 566 S.E.2d at 567.

Based on the foregoing, we hereby grant a writ of prohibition to Petitioner to prevent

---

**13.** While Justice Marshall's thoughts were articulated in a dissent (which questioned the majority's decision to accord deference to district court decisions on whether potential conflict justifies disqualification of counsel), he specifically noted with regard to his discussion of the presumption that attaches to counsel of choice, that "[i]n these respects, I do not believe my position differs significantly, if at all, from that expressed in the opinion of the Court." *Wheat,* 486 U.S. at 166, 108 S.Ct. 1692 (Marshall, J., dissenting).

enforcement of the order of disqualification entered by the Circuit Court of Morgan County on August 16, 2002.

Writ granted.

DAVIS, Chief Justice, concurring.

(Filed Dec. 5, 2002)

In this proceeding, the majority opinion has issued a writ of prohibition precluding the circuit court from disqualifying the petitioner's defense counsel. I concur in this judgment. I write separately to clarify issues the majority opinion failed to address, but which I believe may pose potential problems in future cases for future litigants.

### A. The State Did Not Have Standing to Disqualify Defense Counsel

The majority opinion *assumed* that the State had standing to seek to disqualify defense counsel. Consequently, the majority opinion addressed the merits of the issue presented without ever addressing the standing issue. However, the issue of standing should have been considered by the majority opinion, even though the issue was apparently not raised by the petitioner below nor before this Court.

We have previously noted that "[g]enerally speaking, '[s]tanding is an element of jurisdiction over the subject matter.'" *State ex rel. Paul B. v. Hill,* 201 W.Va. 248, 256, 496 S.E.2d 198, 206 (1997) (quoting 21A Michie's Jurisprudence *Words & Phrases* 380 (1987) (citing *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.,* 611 F.Supp. 1542 (E.D.Va.1985), *vacated on other grounds,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987))). *See also Taff v. Bettcher,* 35 Conn. App. 421, 646 A.2d 875, 877 (Conn.App.1994) ("The issue of standing implicates the court's subject matter jurisdiction."). We have also recognized that "[w]here neither party ... raises, briefs, or argues a jurisdictional question presented, this Court has the inherent power and duty to determine [the issue] unilaterally[.]" Syl. pt. 2, in part, *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995). *See Expedited Transp. Sys., Inc. v. Vieweg,* 207 W.Va. 90, 96, 529 S.E.2d 110, 116

(2000) ("[B]efore reaching the substantive issues raised, we must first contemplate whether the circuit court had jurisdiction[.]"). Therefore, this Court had the authority and the duty to address the issue of standing in this case *sua sponte.*

In my review of this Court's prior decisions, I have failed to uncover any case specifically ruling upon the question of who has standing to raise the issue of a conflict of interest by an attorney, in relation to his/her representation of a former client. Other courts, however, have addressed the matter. Those courts have held that "[a]s a general rule, a stranger to an attorney-client relationship lacks standing to complain of a conflict of interest in that relationship." Syllabus, *Morgan v. North Coast Cable Co.,* 63 Ohio St.3d 156, 586 N.E.2d 88 (Ohio 1992). That is, "as a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *United States v. Rogers,* 9 F.3d 1025, 1031 (2d Cir.1993).[1] *Accord Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio,* 900 F.2d 882 (6th Cir.1990); *In re Yarn Processing Patent Validity, Celanese Corp. v. Leesona Corp.,* 530 F.2d 83 (5th Cir.1976); *Fisher Studio v. Loew's, Inc.,* 232 F.2d 199 (2d Cir.1956); *Richardson v. Hamilton Int'l Corp.,* 333 F.Supp. 1049 (E.D.Pa.1971); *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371 (S.D.Tex. 1969); *Murchison v. Kirby,* 201 F.Supp. 122 (S.D.N.Y.1961); *Johnson v. Prime Bank,* 219 Ga.App. 29, 464 S.E.2d 24 (Ga.Ct.App.1995); *Ferguson v. Alexander,* 122 S.W.2d 1079 (Tex.Civ.App.1938). The underlying rationale for this rule is that "a lawyer owes no general duty of confidentiality to nonclients." *DCH Health Servs. Corp. v. Waite,* 95 Cal. App.4th 829, 115 Cal.Rptr.2d 847, 849 (Ct. App.2002). Courts have also noted that "[t]he refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights." *United States v. Rogers,* 9 F.3d 1025, 1031 (2d Cir.1993).

*Appeal of Infotechnology, Inc.,* 582 A.2d 215 (Del. 1990).

---

1. The narrow exceptions to the general rule are not applicable in this case. *See generally In re*

In the instant proceeding, defense counsel's "implied" client was a co-defendant who entered a guilty plea. Assuming that the co-defendant, as a nonparty, could seek to disqualify defense counsel, the co-defendant in these proceedings chose not to seek disqualification. Instead, the State sought to disqualify defense counsel based upon defense counsel's implied attorney-client relationship with the co-defendant. Under the general rule addressing this issue, the State did not have standing to seek disqualification of defense counsel. Consequently, the majority opinion should have issued the writ based upon the State's lack of standing to raise the conflict of interest issue.

The fact that the majority opinion did not address the standing issue should not be interpreted to mean that the opinion imposes standing on the State or any party seeking to disqualify an opposing counsel, on the grounds of a conflict of interest by counsel due to his/her prior representation of a third party. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 352 n. 2, 116 S.Ct. 2174, 2180 n. 2, 135 L.Ed.2d 606, 618 n. 2 (1996) ("[W]e have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."); *Hagans v. Lavine*, 415 U.S. 528, 535 n. 9, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577, 586 n. 5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."). To be clear, as a general rule, only a party to an attorney-client relationship may seek to have his/her former attorney disqualified from a case on the grounds of conflict of interest arising from the former representation.

### B. Practical Application of the Majority Opinion

The majority opinion has set out six new syllabus points that were aimed at assisting the lower courts in resolving attorney disqualification issues. In my reading of the new syllabus points, I do not believe they provide practical guidance for lower courts.[2]

To begin, I believe trial courts should understand the legal conceptual framework, which is not expressly stated in the majority opinion, that governs the creation of an attorney-client relationship with a prospective client. The legal concept is that "[a]n implied attorney-client relationship may result when a prospective client divulges confidential information during a consultation with an attorney for the purpose of retaining the attorney, even if actual employment does not result." *Pro–Hand Servs. Trust v. Monthei*, 310 Mont. 165, 49 P.3d 56, 59 (Mont.2002). In other words, the holding of the majority opinion recognizes an "implied" attorney-client relationship with respect to information given by a prospective client. The significance of the implied attorney-client relationship is that "[t]he attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment[.]" *Hooser v. Superior Court*, 84 Cal.App.4th 997, 101 Cal. Rptr.2d 341, 345–46 (Cal.App.2000).

Courts have justified the imposition of an implied attorney-client relationship onto communication by a prospective client on the grounds that "[a]t the inception of the contacts between the layman and the lawyer it is essential that the layman feel free of danger in stating the facts of the case to the lawyer whom he consults." *King v. King*, 52 Ill. App.3d 749, 10 Ill.Dec. 592, 367 N.E.2d 1358, 1360 (Ill.App.Ct.1977). To deny an implied attorney-client relationship in this situation would mean that no prospective client "could ever safely consult an attorney for the first time ... if the [attorney-client] privilege depended on the chance of whether the attorney after hearing the statement of facts decided to accept employment or decline it." *In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992). *See generally Hiskett v. Wal–Mart Stores,*

---

**2.** In the body of its opinion, the majority relies heavily upon principles discussed in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 211 W.Va. 423, 566 S.E.2d 560 (2002) (per curiam). While I do not disapprove of the principles the majority opinion borrowed from *Ogden*, I must point out that I dissented in part to the application of those principles to the facts presented in that case. *See Ogden*, 211 W.Va. at 430, 566 S.E.2d at 567 (Davis, C.J., concurring, in part, and dissenting, in part).

*Inc.*, 180 F.R.D. 403, 405 (D.Kan.1998); *Perkins v. Gregg County*, 891 F.Supp. 361, 364 (E.D.Tex.1995); *Nuccio v. Chicago Commodities, Inc.*, 257 Ill.App.3d 437, 195 Ill.Dec. 670, 628 N.E.2d 1134, 1137 (Ill.App.1993). Consequently, as this Court has previously recognized, "[i]t is a nigh universal rule that '[t]he disqualification of an attorney by reason of conflict of interest will not be denied solely because there is no actual attorney-client relationship between the parties.'" *State ex rel. Taylor Assocs. v. Nuzum*, 175 W.Va. 19, 23, 330 S.E.2d 677, 681 (1985) (quoting *Nichols v. Village Voice, Inc.*, 99 Misc.2d 822, 824, 417 N.Y.S.2d 415, 418 (1979)).

In determining whether an attorney should be disqualified, the majority opinion states in Syllabus point 3 that the trial "court must satisfy itself from a review of the available evidence, including affidavits and testimony of affected individuals, that confidential information was in fact discussed." While I do not disagree with this ruling, I believe the majority opinion should have gone further in crystalizing the trial court's role. The court in *Pro–Hand Services Trust v. Monthei*, 310 Mont. 165, 49 P.3d 56 (Mont.2002), provided some practical guidance for trial courts when making a determination as to whether confidential information was conveyed to an attorney by a prospective client:

> [A]n alleged client should not be required, at a disqualification hearing, to reveal actual confidences that he or she maintains were disclosed to establish an attorney-client relationship. Such a procedure would violate the very disclosure the [attorney-client privilege] is designed to protect. However, simply making a representation to the court that confidential information was disclosed offers nothing to assist the court in making a reasoned judgment. The alleged client must at least inform the court of the nature of the confidential information disclosed. For example, the alleged client can testify that she informed the prospective counsel of the nature of the transaction, her position regarding the claim or defense, witnesses who support or oppose her claim [or defense], ... and other relevant personal information. This type of testimony, without getting specific, would alert the court of the possibility that confidential information had been previously disclosed.

*Monthei*, 49 P.3d at 59. *See Trone v. Smith*, 621 F.2d 994, 999 (9th Cir.1980) ("The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect.").

In view of the foregoing, I concur in the judgment reached in this case.