658 S.E.2d 562

**Ronald W. HOLCOMB, Petitioner**

v.

**The Honorable William SADLER, Judge of the Circuit Court of Mercer County, Respondent.**

No. 33669.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 2008.

Decided Feb. 15, 2008.

Henry L. Harvey, Joseph T. Harvey, Harvey & Janutolo Law Offices, Princeton, WV, for Petitioner.

Timothy D. Boggess, Mercer County Prosecuting Attorney, Princeton, WV, for Respondent.

PER CURIAM.

Petitioner Ronald W. Holcomb seeks a writ of prohibition from this Court to prohibit the Mercer County Circuit Court from enforcing an order approving DNA testing of his deceased child's fingernail scrapings at the West Virginia State Police Crime Laboratory. Arguing that the DNA testing should be performed by an independent laboratory rather than the state's crime lab, Mr. Holcomb, who is charged with first degree murder and death of a child by a parent, seeks to prevent the testing based on the State's representation that the testing at issue will result in the destruction of the DNA sample. Upon our review of the averments raised herein, we conclude that Petitioner has failed to establish the prerequisite grounds for issuance of a writ of prohibition.

## I. Factual and Procedural Background

Petitioner was arrested for child abuse with injuries that pertained to his five-year-old daughter, Brooklyn Holcomb, on or about January 15, 2007. Subsequently, he was indicted for causing the death of his daughter. He was charged with one count of first degree murder and a second count of death of a child by a parent by child abuse.[1]

During the hospitalization of Petitioner's daughter preceding her death, scrapings were taken from beneath her fingernails and those scrapings were transferred to the State Forensic Laboratory. Scott Ash, an assistant prosecuting attorney for Mercer County, informed Petitioner's counsel of the State's intent to perform forensic DNA testing of the fingernail scrapings taken from Mr. Holcomb's daughter. Before any testing was

1. According to the State's representation in its brief, the child's body bore evidence of a sus- tained beating inflicted before she died as a result of head injuries.

initiated, the State Forensic Laboratory notified the State that the test being requested would necessarily result in the destruction of the scrapings sample. The State immediately instructed the State Forensic Lab not to institute testing of the sample so that Petitioner could be advised of this information.

Upon Petitioner's notification of the likely destruction of the scrapings sample, Petitioner sought to gain the State's agreement that the DNA testing be performed by an independent forensic laboratory. When the State refused to agree to this request, Petitioner filed a motion seeking injunctive relief to halt the DNA testing requested by the State. On August 27, 2007, the trial court heard argument from the parties on the motion for injunctive relief.

The trial court, by order entered on August 27, 2007, directed that the DNA "testing be permitted, but that the defendant's expert shall be permitted to review the samples prior to testing." In addition, the trial court proposed "that the West Virginia State Laboratory attempt to test the sample without consuming the sample." Judge Sadler stayed the enforcement of the subject order to permit Petitioner to seek a writ of prohibition from this Court. By order of October 24, 2007, this Court issued a rule to show cause as to why a writ of prohibition should not issue.

## II. Standard of Review

As we recognized in *State ex rel. Youngblood v. Sanders,* 212 W.Va. 885, 575 S.E.2d 864 (2002),

This Court's standard for issuing writs of prohibition stemming from allegations that the lower court exceeded its authority is set forth in syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

212 W.Va. at 888, 575 S.E.2d at 867–68 and syl. pt. 1.

Against this standard, we proceed to determine whether a writ of prohibition should issue in this case.

## III. Discussion

Petitioner asserts that enforcement of the trial court's order authorizing the forensic analysis of his daughter's fingernail scrapings would violate his right to have such evidence subjected to independent testing under both Rule 16 of the West Virginia Rules of Criminal Procedure and pursuant to the common law of this state. Pursuant to that procedural rule, a defendant who makes a request of the state is entitled to "inspect . . . tangible objects . . . which are within the possession, custody and control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial. . . ." W.Va.R.Crim.P. 16(a)(1)(C).

While this Court clearly held in *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996), that "[t]he right of inspection under this rule [Rule 16(a)(1)(C)] includes the right to have the defendant's own expert examine the tangible evidence that the State contends was used or possessed by the defendant at the time of the commission of the crime," we fully recognized that this right of inspection has limits. 198 W.Va. at 623, 482 S.E.2d at 608, syl. pt. 7, in part. After discussing the procedural requirements for an inspection

request and noting that the request is subject to the discretion of the trial court, we commented in *Crabtree* that a trial court should, as a general matter, deny a defendant's properly asserted request only when the motion is untimely or made in bad faith. 198 W.Va. at 632–33, 482 S.E.2d at 617–18. Notwithstanding our preference for permitting inspection where possible, however, we flatly rejected the premise that a criminal defendant has "an absolute right to analyze evidence." *Id.* at 633, 482 S.E.2d at 618.

And, while our decision in *Crabtree* did not involve issues arising from the consumption of evidence, we previously addressed matters of this ilk in *State v. Thomas,* 187 W.Va. 686, 421 S.E.2d 227 (1992). At issue in *Thomas,* was the destruction of certain bloodstain evidence "without preserving some of the material that was tested *or* photographs of the test results themselves for independent analysis." *Id.* at 690, 421 S.E.2d at 231 (emphasis supplied). In analyzing whether the defendant was wrongfully prevented from cross examining the expert who performed the blood tests, we discussed the realities of testing procedures:

> In an ideal world, the State would be able to preserve enough of the sample that a completely independent test could be performed. However, we recognize that given the necessities of certain tests and the small quantities of available material, preservation of enough of the sample for an independent test may not be possible. That is why we accept the general proposition that the State does not commit a violation when it, in good faith, uses up the entire sample in performing a necessary scientific test. With that "right" comes a responsibility: the State must put the defendant in as nearly identical position as he would have been in had he been able to perform an independent test.

187 W.Va. at 693–94, 421 S.E.2d at 234–35 (footnote omitted).

■ Striking a balance between foregoing testing that is likely to result in evidence consumption and providing a criminal defendant with an opportunity to inspect material evidence, we held in syllabus point four of *Thomas:* "When the government performs a complicated test on evidence that is important to the determination of guilt, and in so doing destroys the possibility of an independent replication of the test, the government must preserve as much documentation of the test as is reasonably possible to allow for a full and fair examination of the results by a defendant and his experts." *Id.* at 688, 421 S.E.2d at 229. In *Thomas,* we concluded that the subject blood test results should not have been admitted in evidence given the combined absence of an evidentiary sample post-testing and any photographic documentation of the testing results. Without one of these two alternative means of allowing the defendant to either subject the evidence to additional testing or to examine the test results and the testing methodology employed, we ruled that the defendant was prevented from conducting a full and fair cross examination of the expert who prepared the blood test at issue. 187 W.Va. at 694, 421 S.E.2d at 235.

Referring to syllabus point four of *Thomas* as the "basic rule regarding complicated tests and consumption of evidence," we applied this rule in *State v. Jarvis,* 199 W.Va. 38, 483 S.E.2d 38 (1996), to hold that the appellant could not meet the showing necessary to establish prejudice solely by virtue of the fact that the evidence lacked additional detectable DNA to permit further testing. Because he had failed to demonstrate "that the State failed to preserved documentation of the test made by its experts," we held that the appellant had "made no showing that the defendant and his experts were unable to conduct a full and fair examination of the results by reviewing adequate documentation of the State's test. . . ." *Id.* at 47, 483 S.E.2d at 47.

What we made clear in *Jarvis* was that the consumption of evidence on its own does not establish that the defendant was denied the opportunity to examine the results and the critical concomitant right of cross examining the expert who performed the testing at issue. In full recognition of the realities of evidentiary testing, we provided an alternative when the evidence cannot be preserved for additional testing by the defendant upon the completion of the State's forensic analy-

sis. That alternative, as we recognized in *Jarvis*, is to require documentation evidence of the testing results that will enable the defendant to cross examine the expert who conducted the testing at issue. Only when that alternative guarantee of inspection—documentary evidence of the test results—is also unavailable can a criminal defendant argue that he has been denied the right to fully and fairly cross examine the expert who produced the evidentiary analysis at issue.

 Given the stage of this matter, it is premature for Appellant to attempt to raise prejudice arising from the alleged consumption of evidence in connection with the DNA analysis sought by the state and ordered by the trial court on his daughter's fingernail scrapings. Even if the scraping sample is destroyed through the testing, there remains the possibility, assuming the State Forensic Laboratory follows established testing protocols and complies with precedent established by this Court in *Thomas*, that sufficient documentary evidence will exist to provide Peti-

tioner with a basis for cross examining any forensic evidence the State seeks to introduce at trial resulting from the DNA analysis ordered by the trial court.

Having concluded that Petitioner cannot demonstrate at this stage of his criminal proceeding that he has been denied the opportunity to examine the testing results for purposes of conducting a meaningful cross examination of the individual who performed the forensics analysis,[2] he has not established his entitlement to a writ of prohibition. Accordingly, we decline to issue the extraordinary relief requested by Petitioner.

Writ denied.

---

**2.** Petitioner is assuming that the sample will be consumed through the testing procedure and that the testing will result in evidence that the State seeks to admit against him at trial. Both of these events have yet to be established. We note that the trial court specifically directed the State Forensics Laboratory "to test the sample without consuming the sample." At this point, the possibility remains that the evidentiary sample at issue could be divided for purposes of permitting Petitioner to conduct his own testing of the fingernail scrapings.