697 S.E.2d 740 (2010)
STATE of West Virginia ex rel. BLUESTONE COAL CORPORATION and Bluestone Coal Sales Corporation, Petitioners,
v.
Honorable James P. MAZZONE, Judge of the Circuit Court of Ohio County, and Mountain State Carbon, LLC, Respondents.
No. 35516.
Supreme Court of Appeals of West Virginia.
Submitted June 1, 2010.
Decided June 23, 2010.
*744 David S. Givens, Flaherty, Sensabaugh & Bonasso, PLLC, Wheeling, WV, Jared M. Tully, Frost Brown Todd LLC, Charleston, WV, Barry D. Hunter, Pro Hac Vice, Rebekah G. Ballard, Pro Hac Vice, Frost Brown Todd LLC, Lexington, KY, for the Petitioners.
Mark R. Hornak, Buchanan Ingersoll & Rooney LLP, Pittsburgh, PA, David B. Cross, David F. Cross, Wellsburg, WV, for the Respondent, Mountain State Carbon, LLC.
DAVIS, Chief Justice:
The petitioners herein, Bluestone Coal Corporation (hereinafter "Bluestone Coal") and Bluestone Coal Sales Corporation (hereinafter "Bluestone Coal Sales"),[1] request this Court to issue a writ of prohibition to prevent the Circuit Court of Ohio County from enforcing its November 20, 2009, order. By that order, the circuit court denied the Bluestone companies' motion to disqualify Buchanan Ingersoll & Rooney LLP (hereinafter "Buchanan Ingersoll") as counsel for Mountain State Carbon, LLC (hereinafter "Mountain State"), which company is the opposing party in the underlying litigation and a respondent to the instant original jurisdiction proceeding. Before this Court, the Bluestone companies contend that Mountain State's counsel should be disqualified from representing Mountain State in the underlying proceedings because such continued representation violates Rules 1.7(a), 1.7(b), 1.9, and 1.10 of the West Virginia Rules of Professional Conduct. Upon the record before us, the parties' arguments, and the pertinent authorities, we grant the requested writ of prohibition. Accordingly, we conclude that the law firm of Buchanan Ingersoll & Rooney LLP is disqualified and barred from representing Mountain State Carbon, LLC, adverse to the interests of Bluestone Coal Corporation or Bluestone Coal Sales Corporation in the underlying litigation in Civil Action No. 08-C-360 (AR) in the Circuit Court of Ohio County, West Virginia.

I.

FACTUAL AND PROCEDURAL HISTORY
A brief review of the nature of the parties and their relationship to one another is instructive to appreciate the context of the instant proceeding. Bluestone Coal and Bluestone Coal Sales, the petitioners herein, are companies engaged in the production and sale of coal. Both Bluestone companies are part of a conglomerate of twenty-nine affiliated closely-held companies owned and operated by James C. Justice, II (hereinafter "Mr. Justice").[2] These affiliated companies share one common General Counsel, Mr. Stephen W. Ball (hereinafter "Mr. Ball"), and the majority of these companies, including the two Bluestone companies involved in this case, are headquartered in the same office building in Beckley, West Virginia.
Mountain State, one of the respondents herein, owns and operates a coke plant in Follansbee, West Virginia, and purchases coal to convert into coke; Mountain State's *745 principal place of business is in Wheeling, West Virginia. On October 5, 2007, Mountain State and Bluestone Coal Sales entered into a coal supply agreement whereby Bluestone Coal Sales agreed to supply all of the coal required by Mountain State's Follansbee coke operations. Bluestone Coal served as the guarantor for Bluestone Coal Sales' obligations under this agreement. When Bluestone Coal Sales failed to deliver the requisite amount of coal in accordance with the agreement's terms, Mountain State filed suit against both Bluestone Coal Sales and Bluestone Coal in the Circuit Court of Ohio County on September 9, 2008.
The law firm representing Mountain State in the underlying litigation, whose disqualification the Bluestone companies seek, is Buchanan Ingersoll. Buchanan Ingersoll is a large, nationwide, law firm, whose principal place of business is in Pittsburgh, Pennsylvania. At various times, Buchanan Ingersoll has been retained as counsel for certain of Mr. Justice's companies, including Dynamic Energy, Inc.; Harlan Development Corporation; James C. Justice Companies LLC; and Sequoia Energy, LLC, for which representations engagement letters were signed. Buchanan Ingersoll also has either directly represented or provided legal counsel to both Bluestone Coal and Bluestone Coal Sales; however, the exact nature of the relationship between Buchanan Ingersoll and the Bluestone companies, as well as whether there currently exists an attorney-client relationship between these entities, is disputed by the parties and will be discussed in further detail in Section III.B. of this opinion. See Section III.B., infra. It appears that Buchanan Ingersoll began providing legal services for both Mountain State and Mr. Justice's companies in approximately 2005.
Following Buchanan Ingersoll's institution of Mountain State's Ohio County lawsuit, the Bluestone companies moved the circuit court to disqualify Buchanan Ingersoll from continuing its representation of Mountain State. In support of their motion, the Bluestone companies variously contended that they were current clients of Buchanan Ingersoll such that continued representation of Mountain State in an adverse capacity would violate Rule 1.7 of the West Virginia Rules of Professional Conduct; that they were former clients of the law firm such that continued representation would violate Rule 1.9; and that, because certain, individual attorneys had formerly represented the Bluestone companies, their disqualification should be imputed to the entire law firm in accordance with Rule 1.10. By order entered November 20, 2009, the circuit court denied the Bluestone companies' motion to disqualify Buchanan Ingersoll, ruling that "no disqualifying conflict exists with respect to Buchanan Ingersoll & Rooney, LLP's representation of Mountain State Carbon, LLC, Plaintiff, in this action."
From this adverse ruling, the Bluestone companies now seek relief in prohibition from this Court.

II.

STANDARD FOR ISSUANCE OF WRIT
The Bluestone companies invoke this Court's original jurisdiction and request this Court to issue a writ of prohibition to prevent the circuit court from enforcing its order denying their motion to disqualify Mountain State's counsel in the underlying proceedings. First, we will consider the propriety of utilizing a writ of prohibition to challenge a lower court's ruling on a motion to disqualify. We then will consider the standard by which this Court determines whether a writ of prohibition should issue.

A. Propriety of Writ of Prohibition for Disqualification Motion
This Court frequently has observed that "a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge the trial court's decision by way of a petition for a writ of prohibition." State ex rel. Ogden Newspapers, Inc. v. Wilkes, 198 W.Va. 587, 589, 482 S.E.2d 204, 206 (1996) (per curiam) (citations omitted) (hereinafter referred to as "Ogden I"). See also State ex rel. Jefferson County Bd. of Zoning Appeals v. Wilkes, 221 W.Va. 432, 655 S.E.2d 178 (2007) (granting writ of prohibition in relation to order denying disqualification motion); State ex rel. Blackhawk Enters., Inc. v. Bloom, 219 W.Va. 333, 337, 633 S.E.2d 278, 282 (2006) (per curiam) ("When considering *746 the issuance of a writ of prohibition arising from a circuit court's ruling on a motion for disqualification, this Court has consistently found the same to be an appropriate method of challenge." (citations omitted)); State ex rel. Blake v. Hatcher, 218 W.Va. 407, 412, 624 S.E.2d 844, 849 (2005) (same); State ex rel. Youngblood v. Sanders, 212 W.Va. 885, 889, 575 S.E.2d 864, 868 (2002) ("With regard to the specific use of writs of prohibition in connection with disqualification motions, we [have] recognized ... that `the Court has consistently found that a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge such ruling by way of a petition for a writ of prohibition.'" (quoting State ex rel. Keenan v. Hatcher, 210 W.Va. 307, 311, 557 S.E.2d 361, 365 (2001))); State ex rel. Ogden Newspapers, Inc. v. Wilkes, 211 W.Va. 423, 426, 566 S.E.2d 560, 563 (2002) (per curiam) (hereinafter referred to as "Ogden II") (commenting that this Court has "recognized the accepted practice of filing a writ of prohibition pursuant to the original jurisdiction of this Court in order to obtain timely judicial review of a lower court's decision regarding a motion for disqualification of an attorney" (citation omitted)); State ex rel. DeFrances v. Bedell, 191 W.Va. 513, 446 S.E.2d 906 (1994) (per curiam) (granting writ of prohibition in relation to order granting disqualification motion); State ex rel. McClanahan v. Hamilton, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993) ("In the past, we have permitted a defendant to challenge a trial court's adverse ruling on a defendant's motion to disqualify the prosecutor in an original proceeding." (citations omitted)); State ex rel. Taylor Assocs. v. Nuzum, 175 W.Va. 19, 23, 330 S.E.2d 677, 682 (1985) (addressing disqualification issue and commenting that "prohibition is a proper remedy in this case").
The Ogden I Court explained the rationale for allowing use of the extraordinary remedy of prohibition to challenge a lower court's decision on a motion to disqualify as follows:
The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay. See State ex rel. DeFrances v. Bedell, 191 W.Va. at 516, 446 S.E.2d at 909.
Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.
Ogden I, 198 W.Va. at 589-90, 482 S.E.2d at 206-07. Based upon the foregoing reasoning, and this Court's long history of acknowledging the propriety of using a petition for writ of prohibition to challenge a lower court's ruling on a motion to disqualify, we now expressly hold that a party aggrieved by a lower court's decision on a motion to disqualify an attorney may properly challenge the lower court's decision by way of a petition for a writ of prohibition.[3] Having determined *747 that a writ of prohibition is a proper remedy for petitioners to seek, we now review our standard for issuing the writ.

B. Standard for Issuance of Writ of Prohibition
We previously have held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code 53-1-1." Syl. pt. 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977). More specifically, this Court has held further that,
[i]n determining whether to entertain and issue the writ of prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
Syl. pt. 4, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996). In light of these established factors, we proceed to consider the parties' arguments.[4]

III.

DISCUSSION
Before this Court, the Bluestone companies request that we issue a writ of prohibition to prevent Buchanan Ingersoll from representing Mountain State in the underlying proceedings. After considering whether the issues raised herein have been rendered moot by the sale of the Bluestone companies to Mechel,[5] we will determine whether Buchanan Ingersoll may properly represent Mountain State in the litigation of its claims against Bluestone Coal and Bluestone Coal Sales.

A. Mootness
In its response to the Bluestone companies' petition for a writ of prohibition, Mountain State contends that the matter of Buchanan Ingersoll's disqualification has been rendered moot by the sale of said companies to a third party. We disagree.
Whether a case has been rendered moot depends upon an examination of the particular facts of a case. "Simply stated, a case is moot when the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969) (internal citation omitted). Thus, mootness may occur when the circumstances of the case change during the course of its pendency. See Friends of the Earth, Inc. v. Laidlaw Envtl. *748 Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 708, 145 L.Ed.2d 610 (2000) ("`A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting United States v. Concentrated Phosphate Exp. Ass'n, Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968))). A case also may be rendered moot when the parties thereto experience a change in status. See Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 593-94, 104 S.Ct. 2576, 2596, 81 L.Ed.2d 483 (1984) (Blackmun, J., dissenting) ("[A] case, although live at the start, becomes moot when intervening acts destroy the interest of a party to the adjudication." (citation omitted)).
A moot case generally cannot properly be considered on its merits. "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, State ex rel. Lilly v. Carter, 63 W.Va. 684, 60 S.E. 873 (1908). Accord Syl. pt. 1, Tynes v. Shore, 117 W.Va. 355, 185 S.E. 845 (1936) ("Courts will not ordinarily decide a moot question."). Nevertheless, a court may determine that an otherwise moot case may be considered due to the nature of the issues raised or the manner in which such issues are presented. See Syl. pt. 1, Israel v. Secondary Schs. Activities Comm'n, 182 W.Va. 454, 388 S.E.2d 480 (1989) ("Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.").
Alternatively, although changes may occur during the course of litigation that typically would render a case moot, the particular circumstances attending such changes may preserve the merits of the case so as to save it from mootness and to permit its consideration by the presiding tribunal. See Hart v. National Coll. Athletic Ass'n, 209 W.Va. 543, 548, 550 S.E.2d 79, 84 (2001) (per curiam) ("[T]he simple fact of apparent mootness, in and of itself, does not automatically preclude our consideration of [a] matter."). Thus, a case may survive mootness upon a change of circumstances. "When collateral effects of a dispute remain and continue to affect the relationship of litigants, the case is not moot." Firefighters Local, 467 U.S. at 585, 104 S.Ct. at 2591 (O'Connor, J., concurring) (footnote and citations omitted). A case also may survive mootness despite a change in party status. "As long as the parties have a concrete interest in the outcome of the litigation, the case is not moot[.]" Firefighters Local, 467 U.S. at 571, 104 S.Ct. at 2584 (citation omitted). Finally, "[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review." Syl. pt. 1, State ex rel. M.C.H. v. Kinder, 173 W.Va. 387, 317 S.E.2d 150 (1984).
In any event, once the issue of mootness has been raised, "[t]he `heavy burden of persua[ding]' the court that the [case has been rendered moot] lies with the party asserting mootness." Friends of the Earth, 528 U.S. at 189, 120 S.Ct. at 708 (quoting Concentrated Phosphate, 393 U.S. at 203, 89 S.Ct. at 364). Here, the party bearing "the `heavy burden of persua[sion],'" id., is Mountain State. Under the facts of the case sub judice, however, Mountain State has not borne its burden.
Before this Court, Mountain State contends that the Bluestone companies' motion to disqualify Buchanan Ingersoll from representing Mountain State in the underlying proceeding is moot and unworthy of further consideration. To support its position, Mountain State cites Mr. Justice's sale of the Bluestone companies to Mechel and suggests *749 that this acquisition constitutes a change in party status that alleviates any alleged or perceived conflict with Buchanan Ingersoll's continued participation in the case. What this argument fails to appreciate, however, is the unique corporate structure enjoyed by the Bluestone companies both before and after their purchase by Mechel such that the status, rights, and liabilities of the real party defendant in interest herein, Mr. Justice, have remained unaffected by this change of ownership. Prior to the sale of the Bluestone companies to Mechel, Mr. Justice served as the owner and operator of these closely-held corporations; as such, Mr. Justice ultimately was responsible for the corporation's debts and liabilities, including those that might result from the instant litigation, and, as such, retained the authority to control the companies' defense herein. As an integral part of the Mechel merger agreement, Mr. Justice retained his ability to control the Bluestone companies' defense in the case sub judice and assumed personal liability for the companies' debts and liabilities that might result from this lawsuit. Thus, the same person, Mr. Justice, retained control of the litigation on behalf of the Bluestone companies and maintained responsibility for the companies' debts both before and after their sale to Mechel. While the ultimate corporate parent for the Bluestone companies has changed, no alterations in the companies' status impact the instant litigation. Mountain State still must look to Mr. Justice as the person in control of the Bluestone companies' defense, and Mr. Justice still remains ultimately responsible for any debts and/or liabilities the Bluestone companies may owe to Mountain State as a result of this litigation.
Therefore, because the status of Mr. Justice in regard to the Bluestone companies' interests has not changed during the course of these proceedings, the issue of Mountain State's representation by Buchanan Ingersoll adverse to the Bluestone companies in this litigation has not been rendered moot. See Firefighters Local, 467 U.S. at 593-94, 104 S.Ct. at 2596 (Blackmun, J., dissenting) (commenting that "a case ... becomes moot when intervening acts destroy the interest of a party to the adjudication" (citation omitted)); Powell v. McCormack, 395 U.S. at 496, 89 S.Ct. at 1951 (determining case to be moot when "the parties lack a legally cognizable interest in the outcome" (citation omitted)). Mr. Justice has, throughout these proceedings, maintained a "concrete interest in the outcome of the litigation," Firefighters Local, 467 U.S. at 571, 104 S.Ct. at 2584 (citation omitted), and, as such, "the case is not moot," id. Accordingly, Mountain State has not borne its "`heavy burden of persua[sion],'" Friends of the Earth, 528 U.S. at 189, 120 S.Ct. at 708 (quoting Concentrated Phosphate, 393 U.S. at 203, 89 S.Ct. at 364), on the issue of mootness, and, thus, we proceed to a consideration of the case on its merits.

B. Attorney Disqualification
In their petition for prohibitory relief, the Bluestone companies contend that Buchanan Ingersoll's continued representation of Mountain State in the underlying matter violates four different provisions of the West Virginia Rules of Professional Conduct: Rule 1.7(a), Rule 1.7(b), Rule 1.9, and Rule 1.10. Prior to addressing the specific grounds upon which disqualification may be based, however, it is instructive to review the inherent authority courts possess to maintain the integrity of the judicial process which may, in certain circumstances, necessitate the disqualification of counsel.
This Court previously has established that a court has the inherent authority to disqualify an attorney from participating in a particular case. Generally,
[a] circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.
Syl. pt. 1, Garlow v. Zakaib, 186 W.Va. 457, 413 S.E.2d 112 (1991). To preserve the integrity of and public confidence in the legal system, we have grounded a court's disqualification *750 authority in the prudential concerns that the challenged representation either suggests an obvious conflict of interest or that it gives rise to improper appearances. "Under the Code of Professional Responsibility, a lawyer may be disqualified from participating in a pending case if his continued representation would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party." Syl. pt. 2, State ex rel. Taylor Assocs. v. Nuzum, 175 W.Va. 19, 330 S.E.2d 677 (1985). Having thus reiterated a court's inherent authority to disqualify counsel from participating in a particular case, we proceed to consider the specific grounds upon which the Bluestone companies base their disqualification motion.
1. Bluestone Coal Corporation. Insofar as an analysis of the facts and circumstances required to disqualify an attorney depends upon the unique characteristics of the case and its impact upon a prior or current attorney-client relationship with the affected client, we separately will examine whether Buchanan Ingersoll should be disqualified from participating in the instant proceeding based upon its relationship with each of the Bluestone companies, i.e., Bluestone Coal and Bluestone Coal Sales. One of the Rules upon which the Bluestone companies seek to disqualify Buchanan Ingersoll from representing Mountain State in the underlying proceedings is Rule 1.9 of the West Virginia Rules of Professional Conduct. Rule 1.9 prohibits an attorney from representing a party whose interests are adverse to those of the attorney's former client in a matter that is substantially related to the prior representation when the former client does not consent to the subsequent representation. Because the parties do not dispute the existence of a former attorney-client relationship between Buchanan Ingersoll and Bluestone Coal,[6] we will proceed to consider whether Rule 1.9 requires Buchanan Ingersoll's disqualification.
Pursuant to Rule 1.9 of the West Virginia Rules of Professional Conduct,
[a] lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or substantially related matter in which that person's interest[s] are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.
As noted in the foregoing discussion, prudential concerns attend a court's disqualification authority. Rule 1.9 has been recognized as safeguarding, among other interests, the sanctity of the attorney-client relationship and the disclosure of client confidences inherent in such representation:
The rule that prohibits lawyers from disclosing or adversely using a former client's confidenceand authorizes courts to disqualify them if they dois a prophylactic one. The rule is concerned, first and foremost, with insuring that a former client will be protected against both intentional and inadvertent disclosure of his confidential information; as well as against the unfair advantage a lawyer could take of her client by using information he communicated in confidence during the course of the earlier representation.
Preserving client confidences may be the touchstone of the rule that limits a lawyer's ability to oppose the interests of a former client; but, contrary to the opinion of some judges, the rule was intended to serve other purposes as well. In certain cases the rule may serve to foster vigorous advocacy on behalf of the lawyer's current client by removing from the case a lawyer who would otherwise have to be conscious of preserving her former client's confidences.

*751 The rule also recognizes that an attorney can obtain more than confidential information from a client; as well as that proper legal representation requires an unimpeded flow of information from client to lawyer, and of advice from lawyer to client; and that, if a client perceived that his lawyer was free to divulge information imparted to her in confidence, he might be reluctant to completely confide in his lawyer; and therefore withhold information critical to his effective representation. The rule exists, therefore, not only to protect confidential communications, but to fulfill the client's reasonable expectations about the loyalty of the lawyer he has retained to represent him in a particular matter; by allaying any apprehension on the part of the clientor the courtthat, if a client communicates confidential information to a lawyer, he may be risking adverse consequences somewhere down the line. The rule thereby serves to encourage clients to freely, frankly, and openly disclosein an atmosphere of trustall of the information counsel needs to adequately prepare her client's case; and, thus, serves to preserve and promote the attorney-client relationship, as well as to promote public confidence in the integrity of the legal profession, the adversarial process, and the judicial system as a whole.
Richard E. Flamm, Lawyer Disqualification: Conflicts of Interest and Other Bases § 7.3, at 126-30 (2003 & Cum.Supp.2010) (footnotes omitted).
In the instant proceeding, the facts surrounding the Bluestone companies' disqualification motion, namely Buchanan Ingersoll's representation of Mountain State herein adversely to Bluestone Coal, come within the purview of subsection a of Rule 1.9, which precludes an attorney's subsequent representation under the enumerated circumstances. See W. Va. R. Prof'l Conduct 1.9(a). With respect to Rule 1.9(a), we previously have held that
Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interest of the former client unless the former client consents after consultation.
Syl. pt. 2, State ex rel. McClanahan v. Hamilton, 189 W.Va. 290, 430 S.E.2d 569 (1993). Thus, it is apparent that five factors must be established in order to disqualify an attorney pursuant to Rule 1.9(a). Accordingly, we now hold that, to disqualify an attorney pursuant to Rule 1.9(a) of the West Virginia Rules of Professional Conduct, five criteria must be satisfied: (1) the existence of an attorney-client relationship between the attorney and the former client; (2) the existence of an attorney-client relationship between the attorney and the subsequent client; (3) the subject matter of the subsequent client's representation either is the same as or is substantially related to the subject matter of the former client's representation; (4) the subsequent client's representation is materially adverse to the interests of the former client; and (5) the former client has not consented, after consultation, to the subsequent representation. Applying these criteria to the facts of the case sub judice, we conclude that Buchanan Ingersoll's prior representation of Bluestone Coal precludes it from representing Mountain State in the underlying litigation.
a. Existence of attorney-client relationship with former client. The first element of Rule 1.9(a) requires the existence of an attorney-client relationship between the attorney and the former client. Whether an attorney-client relationship has been established is a matter of contract, and such contract may be evidenced either by written agreement or by implication. See State ex rel. DeFrances v. Bedell, 191 W.Va. 513, 517, 446 S.E.2d 906, 910 (1994) (per curiam) ("The relationship of attorney and client is a matter of contract, expressed or implied."). Where the attorney-client relationship has arisen by implication, we explicitly have "recognized that the attorney-client relationship can exist without an agreement for compensation[, and] an attorney-client relationship may be implied from the conduct of the parties." Committee on Legal Ethics of the West Virginia State Bar v. Simmons, 184 W.Va. 183, *752 186, 399 S.E.2d 894, 897 (1990) (per curiam) (citations omitted). Indeed,
[a]s soon as a client has expressed a desire to employ an attorney and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation.
Syl. pt. 1, Keenan v. Scott, 64 W.Va. 137, 61 S.E. 806 (1908).
Although the parties to this proceeding have provided numerous letters of engagement in support of their respective positions, the record presented for our consideration does not contain an engagement letter memorializing Buchanan Ingersoll's prior representation of Bluestone Coal. Nevertheless, the parties do not dispute that Buchanan Ingersoll represented Bluestone Coal in the Greenbrier County, West Virginia, case of Coal Sourcing and Sales, Inc. v. Bluestone Coal Corporation, et al., No. 06-C-30 (Greenbrier County, W.Va., Cir. Ct.).[7] In this regard, the record documents demonstrate that Buchanan Ingersoll, through its attorney Kathleen Jones Goldman, appeared as counsel for Bluestone Coal in those proceedings; provided a defense for Bluestone Coal throughout the litigation; and appeared as attorney of record on behalf of Bluestone Coal in that case. Therefore, absent an express written agreement, it is apparent that an implied attorney-client relationship existed between Buchanan Ingersoll and Bluestone Coal with respect to Buchanan Ingersoll's representation of Bluestone Coal in the Coal Sourcing litigation, thus fulfilling the first element of Rule 1.9(a).
b. Existence of attorney-client relationship with subsequent client. The second Rule 1.9(a) factor requires there to exist an attorney-client relationship between the attorney and a subsequent client, the representation of whom is contested by the disqualification motion. It goes without saying that the parties concede the existence of an attorney-client relationship between Buchanan Ingersoll and Mountain State insofar as the foundation upon which the Bluestone companies base their disqualification motion is this relationship's very existence. Thus, consistent with our recognition of a former attorney-client relationship in the preceding section, we find that a subsequent attorney-client relationship exists so as to satisfy the second Rule 1.9(a) factor.
c. Same or substantially related matter. The third criterion necessary for the disqualification of an attorney pursuant to Rule 1.9(a) is that the subject matter of the subsequent client's representation either is the same as or is substantially related to the subject matter of the former client's representation. With respect to this requirement, we have explained that, "[u]nder Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." Syl. pt. 3, McClanahan, 189 W.Va. 290, 430 S.E.2d 569. More specifically,

*753 [u]nder West Virginia Rule of Professional [Conduct] 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.
Syl. pt. 1, State ex rel. Keenan v. Hatcher, 210 W.Va. 307, 557 S.E.2d 361 (2001).
Applying this criterion to the facts of the case before us, it is apparent that the nature of Buchanan Ingersoll's representation of Mountain State in the underlying proceedings is "substantially related" to its prior representation of Bluestone Coal insofar as both the former and subsequent representations concern the Bluestone companies' performance, or lack thereof, under coal supply agreements under the factual, circumstantial, and legal contexts of the two cases. See Syl. pt. 3, McClanahan, 189 W.Va. 290, 430 S.E.2d 569.
Factually, the two representations are virtually the same. Both the Coal Sourcing case and the instant litigation involve the same type of contract: a coal supply agreement. The agreements both involve the same mine, i.e., the Keystone Mine, and the same coal from that same mine. In both proceedings, Bluestone Coal has been named as a party defendant with respect to the failure to deliver coal as specified by the subject coal supply agreements and is ultimately liable for any obligations arising thereunder.
Circumstantially, the two representations also are substantially related and strikingly similar insofar as "the current matter involves the work the lawyer performed for the former client." Syl. pt. 1, in part, Keenan, 210 W.Va. 307, 557 S.E.2d 361. Both cases allege deficient performance of a coal supply agreement, which is precisely the type of case in which Buchanan Ingersoll formerly represented Bluestone Coal. Specifically, Buchanan Ingersoll formerly represented Bluestone Coal as a defendant defending against allegations of a failure to perform a coal supply agreement in the Coal Sourcing case, and now is currently representing Mountain State as a plaintiff claiming that the coal for which it had contracted has not been delivered pursuant to the governing coal supply agreement in the instant litigation.
Legally, the two representations are nearly identical such that "there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." Syl. pt. 1, in part, Keenan, 210 W.Va. 307, 557 S.E.2d 361. See also Syl. pt. 4, McClanahan, 189 W.Va. 290, 430 S.E.2d 569 ("Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed."). Under the facts of this case, not only is there a substantial risk that the attorney could have used information obtained from the former client in the prior representation, there is actual evidence that such knowledge has been used to the former client's detriment. In both cases, Bluestone Coal was named as a party defendant. During the course of the Coal Sourcing litigation, Bluestone Coal asserted a defense of force majeure to excuse its nonperformance of the subject coal supply agreement. Reliance on this defense required Bluestone Coal to reveal its confidential coal supply agreements to its counsel. During the litigation initiated by Mountain State, Buchanan Ingersoll, on behalf of Mountain State, requested documents from Bluestone Coal regarding its prior reliance on the defense of force majeure before Bluestone Coal had filed an answer to Mountain State's complaint or had indicated what, if any, defenses it intended to assert in response to such claims. Because Bluestone Coal had not yet attempted to rely upon the defense of force majeure, and had not even had an opportunity to respond to Mountain State's complaint, it is apparent that Buchanan Ingersoll, from its former representation, possessed sufficient knowledge of Bluestone Coal to anticipate the defense upon which it *754 may have relied in response to Mountain State's complaint. This strategy indicates that Buchanan Ingersoll used information it obtained from its former representation of Bluestone Coal to the detriment of its former client. Thus, because the subject matter of Buchanan Ingersoll's former and subsequent representations are virtually the same, it is clear that the third criterion for disqualification has been satisfied.
d. Materially adverse to former client's interests. The fourth element of a Rule 1.9(a) analysis requires the subsequent client's representation to be materially adverse to the interests of the former client. In explaining this requirement, the Comment to Rule 1.9 states that "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." It goes without saying that Buchanan Ingersoll's subsequent representation of Mountain State in the instant proceedings necessitated "a changing of sides," id., from the stance it assumed in its former representation of Bluestone Coal. In the former litigation, Bluestone Coal was named as a defendant to the case; in the subsequent litigation, Mountain State is named as the plaintiff in the case. As such, it is evident that the parties' interests are materially adverse insofar as they are on opposing sides of the litigation. Accordingly, the fourth Rule 1.9(a) element has been satisfied.
e. Lack of former client's consent. The fifth and final factor that is required to disqualify an attorney pursuant to Rule 1.9(a) requires that the former client has not consented, after consultation, to the subsequent representation. We have interpreted this requirement as follows:
Rule 1.9(a) of the Rules of Professional Conduct recognizes that even though an attorney may have a conflict of interest with regard to a former client, the attorney may continue the representation if the former client, after consultation, consents to the representation. During this consultation, the attorney must make a full disclosure to the former client so that an intelligent decision may be made on the consent.
Syl. pt. 5, State ex rel. McClanahan v. Hamilton, 189 W.Va. 290, 430 S.E.2d 569.
Upon the record presented to us for consideration of this case, we cannot find any evidence of such a requisite consultation between Buchanan Ingersoll and Bluestone Coal, much less Bluestone Coal's consent to Buchanan Ingersoll's subsequent representation of Mountain State. The only correspondence referencing the attorney-client relationship between Buchanan Ingersoll and Bluestone Coal is an August 26, 2008, letter in which Buchanan Ingersoll politely declines representation of Bluestone Coal in a specified matter for fear that such representation would create a "risk of [a] ... mo[tion] to disqualify" Buchanan Ingersoll which would, in its opinion, then "place [Bluestone Coal] in an unnecessarily precarious position within the context of the litigation." Apart from acknowledging that it "greatly values its ongoing relationship with Bluestone Coal Corporation" and noting that it "is honored to consider th[is] compan[y] as [a] client," no mention is made of Buchanan Ingersoll's intent to subsequently represent Mountain State or a request that Bluestone Coal consent to such subsequent representation even though this letter was sent a mere fourteen days before Buchanan Ingersoll filed suit against Bluestone Coal in the underlying proceedings.
Despite this lack of consultation and explicit consent by Bluestone Coal, Mountain State nevertheless contends that such a waiver was set forth in a specific waiver letter and, thus, by virtue of its acquiescence to those terms, Bluestone Coal has waived any objection it may have regarding Buchanan Ingersoll's subsequent representation of clients as contemplated by Rule 1.9. This argument would be compelling were it not for one simple, fatal flaw: Bluestone Coal never signed any such waiver letter![8] Absent *755 any indication that Buchanan Ingersoll consulted with Bluestone Coal regarding its subsequent representation of Mountain State and in light of Bluestone Coal's failure to consent to such representation, the fifth and final factor of Rule 1.9(a) has been fulfilled. Having established all of the requirements for disqualification of an attorney pursuant to Rule 1.9(a) of the West Virginia Rules of Professional Conduct, we conclude that the circuit court clearly erred as a matter of law in refusing to disqualify Buchanan Ingersoll in the underlying proceedings. See Syl. pt. 4, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12. Therefore, we grant the requested writ of prohibition to disqualify the law firm of Buchanan Ingersoll & Rooney LLP from representing Mountain State Carbon, LLC, adverse to the interests of Bluestone Coal Corporation in the underlying litigation in the Circuit Court of Ohio County, West Virginia, in Civil Action No. 08-C-360 (AR).[9]
2. Bluestone Coal Sales Corporation. Because Buchanan Ingersoll is disqualified from participating in this action due to its prior representation of Bluestone Coal, we need not address other, different grounds for its disqualification vis-à-vis Bluestone Coal Sales. We reach this conclusion based upon the reasoning of the United States District Court for the Eastern District of New York in the case of United States v. Nabisco, Inc., No. CV-86-3277, 1987 WL 14085 (E.D.N.Y. July 10, 1987) (mem. order). In the Nabisco case, the United States filed a complaint against Nabisco, Inc. (hereinafter "Nabisco"), and Sag Harbor Industries, Inc. (hereinafter "Sag Harbor"). The defendants cross-claimed against each other and, in addition, Sag Harbor asserted a counterclaim against the United States. The law firm representing Sag Harbor in that action was disqualified due to its representation, in an unrelated matter, of a company that had been acquired by Nabisco. The law firm argued, however, that its disqualification from representing Sag Harbor against Nabisco should not prevent it from representing Sag Harbor with respect to Sag Harbor's defense and counterclaim against the United States. The district court addressed the issue thusly:
[The law firm] argues that, should the Court order disqualification, the Court should only disqualify [the law firm] from representing defendant Sag Harbor vis-à-vis its cross-claim against defendant Nabisco. [The law firm] argues that, once it is precluded from representing defendant Sag Harbor against defendant Nabisco, there is no reason to bar the firm from defending Sag Harbor against the plaintiff's cost recovery claims. However, [the law firm] has cited no case for the proposition that a law firm can be disqualified from representing a client with respect to some claims in the action but continue to represent the client with respect to other claims. [The law firm's] request would require that Sag Harbor retain two law firms to prosecute this action. Moreover, the basis of Sag Harbor's cross-claim against defendant Nabisco for indemnification and contribution is substantially the same as its counterclaim against the plaintiff.... There is nothing in the record which indicates that Sag Harbor has consented to such an arrangement.
Nabisco, Inc., 1987 WL 14085, at *6 (footnote omitted). Likewise, in the instant case, allowing Buchanan Ingersoll to represent *756 Mountain State with respect to its claims against Bluestone Coal Sales would require Mountain State to retain two law firms to prosecute this action: one law firm to represent Mountain State against Bluestone Coal and Buchanan Ingersoll to represent Mountain State against Bluestone Coal Sales. In practice, those two law firms would be prohibited, due to Buchanan Ingersoll's disqualification as to Bluestone Coal, from cooperating in their representation of Mountain State thus depriving Mountain State of fully-informed advocacy by its joint counsel.
Moreover, this Court previously has held that, "[u]nder the Code of Professional Responsibility, a lawyer may be disqualified from participating in a pending case if his continued representation would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party." Syl. pt. 2, Taylor Assocs., 175 W.Va. 19, 330 S.E.2d 677. Under the facts of the case sub judice, we find that Buchanan Ingersoll's continued representation of Mountain State against Bluestone Coal Sales, following its disqualification from prosecuting claims against Bluestone Coal Sales' sister company, Bluestone Coal, creates an apparent conflict of interest and a definite appearance of impropriety. See, e.g., Syl. pt. 1, Garlow, 186 W.Va. 457, 413 S.E.2d 112 ("A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship."). Therefore, consistent with our determination that Buchanan Ingersoll is precluded from representing Mountain State adversely to Bluestone Coal in this case, we likewise find that Buchanan Ingersoll is disqualified from representing Mountain State adversely to Bluestone Coal Sales in the instant litigation in Ohio County Circuit Court Civil Action No. 08-C-360 (AR).

IV.

CONCLUSION
For the foregoing reasons, the requested writ of prohibition is hereby granted, and the law firm of Buchanan Ingersoll & Rooney LLP is hereby disqualified and barred from representing Mountain State Carbon, LLC, adverse to the interests of Bluestone Coal Corporation or Bluestone Coal Sales Corporation in the underlying litigation in the Circuit Court of Ohio County, West Virginia, in Civil Action No. 08-C-360 (AR).
Writ Granted.
NOTES
[1] For ease of reference and where no distinction between the petitioning parties is required, Bluestone Coal and Bluestone Coal Sales will be referred to collectively as "the Bluestone companies."
[2] On May 8, 2009, Mr. Justice executed an Agreement and Plan of Merger whereby he sold certain of his companies, including Bluestone Coal and Bluestone Coal Sales, to Mechel OAO (hereinafter "Mechel"). Despite this sale, Mr. Justice has retained control over the underlying litigation involving the two Bluestone companies and has assumed responsibility for any liability attributed to the Bluestone companies as a result of such proceedings.
[3] If, however, an aggrieved party wishes to challenge a lower court's ruling on a disqualification motion through a petition for a writ of prohibition to this Court, a record must be made to permit this Court to consider the sufficiency of the grounds asserted for the disqualification. See Syl. pt. 5, Garlow v. Zakaib, 186 W.Va. 457, 413 S.E.2d 112 (1991) ("Before a circuit court disqualifies a lawyer in a case because the lawyer's representation may conflict with the Rules of Professional Conduct, a record must be made so that the circuit court may determine whether disqualification is proper. Furthermore, this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record. In the alternative, if the circuit court's order disqualifying a lawyer is based upon an inadequately developed record, this Court, under appropriate circumstances, may remand a case to the circuit court for development of an adequate record.").
[4] Mountain State has argued that this Court may reverse the trial court's ruling on the Bluestone companies' motion to disqualify only upon finding a flagrant disregard of the law on the part of the circuit court. In support of this argument, Mountain State relies on this Court's decision in Woodall v. Laurita, 156 W.Va. 707, 195 S.E.2d 717 (1973). However, the Woodall case is in accord with the standards we have set forth above insofar as it acknowledges that, in cases where it is alleged that the trial court has exceeded its legitimate powers, "the issuance of the writ is discretionary with the appellate court. Prohibition will issue only in clear cases of abuse." 156 W.Va. at 712, 195 S.E.2d at 720 (citation omitted). The language from Woodall seized upon by Mountain State to assert a "flagrant disregard" standard is merely dicta that does not change the standards for issuing a writ of prohibition.
[5] See supra note 2.
[6] By contrast, the parties vehemently dispute whether there exists a current attorney-client relationship between Buchanan Ingersoll and Bluestone Coal such as would call into question the prohibitions of Rule 1.7 of the West Virginia Rules of Professional Conduct.
[7] Although the parties do not dispute the existence of a former attorney-client relationship between Buchanan Ingersoll and Bluestone Coal, it should be noted that an actual attorney-client relationship is not necessarily required for disqualification purposes. This Court previously has held that, "[w]here an attorney has received confidential information from a prospective client, the attorney may be disqualified from representing another individual on grounds of actual or presumed conflict despite the absence of an actual attorney-client relationship." Syl. pt. 2, State ex rel. Youngblood v. Sanders, 212 W.Va. 885, 575 S.E.2d 864 (2002). See also State ex rel. Taylor Assocs. v. Nuzum, 175 W.Va. 19, 23, 330 S.E.2d 677, 681 (1985) ("It is a nigh universal rule that: `The disqualification of an attorney by reason of conflict of interest will not be denied solely because there is no actual attorney-client relationship between the parties. A "fiduciary obligation or an implied professional relation" may exist in the absence of a formal attorney-client relationship.... It is clear that when an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney-client relationship.' Nichols v. Village Voice, Inc., 99 Misc.2d 822, [824,] 417 N.Y.S.2d 415, 418 (1979) [(citation omitted) ].").
[8] The waiver letter upon which Buchanan Ingersoll relies to establish Bluestone Coal's waiver of its objection to subsequent representations was signed on January 17, 2008, and references the representation of Bluestone Industries, Inc., not Bluestone Coal Corporation. Moreover, the letter does not discuss the potential, future representation of Mountain State Carbon, LLC; rather, the focus of this letter is to obtain a limited waiver with respect to cases involving Wheeling Pittsburgh Steel Corporation. Therefore, even if Bluestone Coal had, itself, signed this letter and waived its objection to Buchanan Ingersoll's future representation of adverse parties, the scope of such waiver is limited to Buchanan Ingersoll's representation of Wheeling Pitt and does not contemplate or extend to the party Buchanan Ingersoll represents in the case sub judice, namely Mountain State. Finally, even if Bluestone Coal had signed a document to waive its objections and even if the waiver applied to Mountain State, such waivers procured by Buchanan Ingersoll have been held to be unenforceable. See, e.g., Celgene Corp. v. KV Pharm. Co., No. 07-4819(SDW), 2008 WL 2937415 (D.N.J. July 29, 2008) (disqualifying Buchanan Ingersoll from representing subsequent client).
[9] In light of our conclusion that Buchanan Ingersoll is barred from representing Mountain State adversely to Bluestone Coal in this case, it is not necessary for us to consider the Bluestone companies' other theories of disqualification with respect to Bluestone Coal.