# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia ex rel.**
**West Virginia Secondary School**
**Activities Commission,**
**Petitioner,**

**vs.  No. 24-32**

**The Honorable Jason Fry,**
**Judge of the Circuit Court of Wayne County,**
**and Toma Gasaj,**
**Respondents.**

**FILED**

**November 14, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner, the West Virginia Secondary School Activities Commission ("WVSSAC"), seeks a writ of prohibition to prevent the enforcement of an order entered January 9, 2024, by the Circuit Court of Wayne County granting the respondent, student Toma Gasaj ("Mr. Gasaj"), a preliminary injunction. The preliminary injunction prevented the WVSSAC from enforcing its "Adoption/Guardianship" Rule and allowed Mr. Gasaj to play varsity high school basketball during the 2023-2024 high school basketball season.[1]

As set forth below, applying the standard for the issuance of a writ of prohibition, the Court finds that the WVSSAC is not entitled to the extraordinary relief it seeks and determines that a memorandum decision denying the requested writ is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Gasaj is a United States citizen. His father lives in Michigan, and Mr. Gasaj lived with his mother and sibling in Croatia until July 2023 when he moved to Huntington, West Virginia, to live with his host family, the Adkinses. Mr. Gasaj turned eighteen[2] in March 2023. When he moved to Huntington in July 2023, Mr. Gasaj was emancipated from his parents. He claimed that he was

---

[1] Counsel Stephen F. Gandee and Lindsay M. Stollings represent the West Virginia Secondary School Activities Commission, and counsel Juston H. Moore represents Mr. Gasaj.

[2] Mr. Gasaj was age-eligible to participate in high school sports during the 2023-2024 school year. *See generally* W. Va. C.S.R. § 127-2-4.1 ("A student in high school who becomes 19 before July 1 . . . shall be ineligible for interscholastic competition."). At all times relevant to this proceeding, Mr. Gasaj was eighteen years old.

1

considering attending Marshall University ("Marshall") to major in business, and that he chose Spring Valley High School ("Spring Valley") to finish his high school education because of its proximity to Marshall, and because its entrepreneurship program would be a good introduction to Marshall's business program. During his high school experience in Croatia, Mr. Gasaj did not play basketball due to numerous foot fractures which required surgery and physical therapy. In August 2023, Mr. Gasaj again sustained a foot fracture and underwent surgery. Mr. Gasaj's physicians did not medically clear him to play basketball until early January 2024.

When he enrolled as a student at Spring Valley in August 2023, Mr. Gasaj inquired about playing varsity basketball for the school during the 2023-2024 high school basketball season. The school's athletic director asked the WVSSAC if Mr. Gasaj would be eligible to play varsity basketball, but the WVSSAC responded that he would not be. The school's principal then requested a waiver, which the WVSSAC's Executive Director denied on October 9, 2023, based on West Virginia Code of State Rules § 127-2-7.1.j, the international student provision of the "Residence-Transfer" Rule:

> Any international student enrolling in a member school who does not meet the criteria of § 127-2-7.1.h [pertaining to foreign exchange students] shall only be eligible to participate at the junior varsity level in any sport for the duration of the time the student is enrolled.

Mr. Gasaj's host father filed an appeal on Mr. Gasaj's behalf. Mr. Adkins argued that, as a United States citizen with a Michigan birth certificate and a United States passport, Mr. Gasaj is not an international student. Additionally, the United States Embassy in Croatia refused to certify Mr. Gasaj as a foreign exchange student or issue a student visa for him to enroll at Spring Valley because he is a United States citizen. The Embassy allegedly informed Mr. Gasaj that he could enroll as a student at any United States high school. In other words, Mr. Gasaj's host father argued that neither the international student provision nor the foreign exchange student provision[3] of the Residence-Transfer Rule applied to the unique facts of this case. By letter dated October 23, 2023,[4] the WVSSAC Board of Directors overturned the Executive Director's prior ineligibility ruling and granted Mr. Gasaj a waiver of the Residence-Transfer Rule. Specifically, the letter stated that "The Board of Directors felt that eligibility should be granted, extreme and undue hardship having been established."

However, on the day after the Board of Directors granted Mr. Gasaj a waiver of the Residence-Transfer Rule, the WVSSAC's Executive Director issued a new letter informing Mr.

---

[3] While the WVSSAC's Residence-Transfer Rule does not allow international students to play varsity sports, the Rule permits students classified as "foreign exchange students" to play varsity sports. *See generally* W. Va. C.S.R. § 127-2-7.1.h (defining eligibility of foreign exchange students).

[4] The parties indicate that this letter was misdated and that its actual date should have been November 16, 2023.

Gasaj that he would be ineligible to participate in varsity sports at Spring Valley due to the Adoption/Guardianship Rule, West Virginia Code of State Rules § 127-2-8:

> 8.1. A student shall be eligible to participate in interscholastic athletics and activities only if: (1) residing with one or both of the parents; (2) residing with a testamentary guardian following the death of the parents; or (3) residing in a location where the student was placed by the WVDHHR pursuant to § 127-2-7.1.c.

> . . . .

> 8.3. Notwithstanding any other provision of the WVSSAC rules and regulations, any student residing with a guardian/custodian other than a testamentary guardian may not compete for a school in any sport on the varsity level but may compete at the junior varsity level. If a student elects to participate at the junior varsity level pursuant to this rule, the student may not participate at the varsity level even after being enrolled at the school for 365 days. However, if a student elects to participate at the junior varsity level pursuant to this rule, and then commences to reside with a custodial parent, the student may participate at the varsity level notwithstanding the fact that the student had previously participated at the junior varsity level pursuant to this rule.

> 8.4. Notwithstanding any other provisions of WVSSAC rules and regulations, legal guardian/custodian may not be changed for athletic reasons. A transfer for athletic reasons is defined in § 127-2-7.2.e.1-4 [*sic*].

Mr. Gasaj appealed from this new ineligibility ruling, but, by letter dated December 21, 2023, the Board of Directors denied his appeal and determined that he was not entitled to a waiver of the Adoption/Guardianship Rule. Mr. Gasaj then filed the underlying petition for injunctive relief in the Circuit Court of Wayne County rather than appealing to the WVSSAC Review Board because the high school boys' basketball season was already in progress, and he hoped for a prompter decision by the circuit court.

By order entered January 9, 2024, the circuit court granted Mr. Gasaj a preliminary injunction ruling that he could compete in varsity basketball at Spring Valley during the 2023-2024 high school basketball season. The WVSSAC filed the instant petition for a writ of prohibition seeking to prohibit the circuit court from enforcing this preliminary injunction order.

As this case has become technically moot, we must first determine whether we may properly consider the merits of this case. *See* Syl. pt. 1, in part, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995) ("[T]his Court has a responsibility *sua sponte* to examine the basis of its own jurisdiction."). *See also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404, 30 L. Ed. 2d 413 (1971) (per curiam) (observing that "[m]ootness is a jurisdictional question" (citations omitted)). Since the WVSSAC's petition to this Court, the 2023-2024 high school boys' basketball season concluded, and, presumably, Mr. Gasaj graduated from high school. Both these conditions render the instant case moot because there is no longer a live controversy at issue. *See State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010) ("Simply stated, a case is moot when the issues presented are no longer live or the parties lack a

legally cognizable interest in the outcome." (internal quotations and citations omitted)). Despite a case's technical mootness, we have held that we may still consider a technically moot matter on its merits if certain criteria are satisfied:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. pt. 1, *Israel by Israel v. W. Va. Secondary Schs. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989). Because this case presents a question of a fleeting nature that is capable of repetition, this Court may properly consider the case on its merits.

In seeking the extraordinary relief of a writ of prohibition, the WVSSAC requests that this Court prevent the circuit court from enforcing its order granting Mr. Gasaj a preliminary injunction that allowed him to play varsity basketball for Spring Valley. The WVSSAC argues that the circuit court erred because the Adoption/Guardianship Rule rendered Mr. Gasaj ineligible to play varsity sports. Our analysis of the merits of this case is guided by the standard for issuing a writ of prohibition, which provides as follows:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). *See also* Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1.").

Considering these prohibition factors, we conclude that the WVSSAC is not entitled to the extraordinary relief it seeks in this case. At this juncture—after the conclusion of the 2023-2024 high school basketball season and Mr. Gasaj's presumed graduation—the first two *Hoover* factors, which address the adequacy of relief through an appeal, do not justify the extraordinary relief in prohibition that the WVSSAC seeks in this case. *See* Syl. pt. 4, in part, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. Rather, the WVSSAC may obtain the same relief on appeal that it seeks in this extraordinary proceeding and would not be further damaged in a way that is not correctable on appeal. Because the instant controversy is now technically moot, we can afford no relief through this extraordinary proceeding that would not also be available to the WVSSAC through an appeal of the circuit court's preliminary injunction order.

While we recognize that the matter was not technically moot when the WVSSAC filed its petition for extraordinary relief, the procedural irregularities in the WVSSAC's consideration of Mr. Gasaj's waiver request substantially contributed to the continued pendency of this case throughout the majority of the 2023-2024 high school basketball season. Although Mr. Gasaj submitted a waiver request well before the basketball season began and the WVSSAC Board of Directors granted him a waiver of the Residence-Transfer Rule's application, the WVSSAC's Executive Director simultaneously determined that the Adoption/Guardianship Rule rendered Mr. Gasaj ineligible to play varsity basketball for Spring Valley. During oral argument, the WVSSAC explained the timing of its decision to render a second eligibility determination based upon a different rule: during the administrative proceedings concerning Mr. Gasaj's appeal of the denial of his initial waiver request under the Residence-Transfer Rule, the WVSSAC learned additional facts indicating that the Adoption/Guardianship Rule rendered Mr. Gasaj ineligible to play varsity sports. Nevertheless, had the WVSSAC's Executive Director denied Mr. Gasaj a waiver under both Rules in his initial determination letter, Mr. Gasaj may have been able to timely appeal both waiver denials and likely could have exhausted his administrative remedies before seeking relief in the circuit court. As the matter unfolded below, though, the WVSSAC's successive rulings required Mr. Gasaj to file two successive appeals to the WVSSAC Board of Directors, one from each waiver denial, which prolonged the resolution of this matter well into the 2023-2024 high school basketball season. This protracted process caused the case to become technically moot so that a review of the circuit court's determination of Mr. Gasaj's eligibility and issuance of a preliminary injunction is no longer a matter of urgency. Under these particular facts, we simply do not find that the remedy of appeal is inadequate and therefore deny the WVSSAC's request for extraordinary relief.

For the foregoing reasons, we conclude that the WVSSAC failed to establish its entitlement to the extraordinary relief it seeks in this case. Therefore, the writ of prohibition requested by the WVSSAC to prohibit the enforcement of the circuit court's January 9, 2024 order granting Mr. Gasaj a preliminary injunction is hereby denied.

Writ Denied.

**ISSUED: November 14, 2024**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice C. Haley Bunn


**CONCURRING AND DISSENTING:**
Justice John A. Hutchison
Judge Thomas B. Hoxie, sitting by temporary assignment


**DISQUALIFIED:**

Justice William R. Wooton


Hutchison, J., concurring in part, and dissenting, in part:

The WVSSAC requested a writ of prohibition from this Court. This Court denied its request. While I concur with the majority that "[b]ecause this case presents a question of a fleeting nature that is capable of repetition, this Court may properly consider the case on its merits[,]" I respectfully dissent from its decision that a writ of prohibition should not have been issued.

> Under Syllabus Point 4 of *State ex rel. Hoover v. Berger*,
>
> > In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunals order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

199 W. Va. 12, 483 S.E.2d 12 (1996). "This is not a mechanical analysis; we weigh the factors holistically 'to determine whether, on balance, they justify the invocation of "this extraordinary remedy."'" *In re Kirkland*, 75 F.4th 1030, 1040–41 (9th Cir. 2023) (citations omitted). The memorandum decision does not examine all five factors; it simply stops with the first two factors.

I disagree with this truncated approach and believe that we should at least examine all five factors before rendering a decision that a writ of prohibition is or is not available. Indeed, by stopping its analysis at the first *Hoover* two factors, the memorandum decision does not address the third factor, "whether the lower tribunal's order is clearly erroneous as a matter of law," the factor that *Hoover* directs is to be given "substantial weight." I believe this third factor weighs heavily in favor of granting the writ in this case.

Mr. Gasaj challenges the validity of the adoption-guardianship rule. To prevail on his challenge, Mr. Gasaj must demonstrate that the rule is unconstitutional as being arbitrary and capricious. His burden in that respect is heavy for he must show that the adoption-guardianship rules does not rationally advance a legitimate government interest. "It is well established, however, that plaintiff bears a heavy burden in proving that government action fails th[is] 'rational basis' test." *Rydeen v. Quigg*, 748 F. Supp. 900, 907 (D.D.C. 1990), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991). "A plaintiff challenging a statute or rule under the rational basis test faces 'a tremendous uphill battle.'" *State ex rel. W. Va. Secondary Sch. Activities Comm'n v. Cuomo*, 247 W. Va. 324, 333, 880 S.E.2d 46, 55 (2022) (quoting *Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp.2d 273, 284 (E.D.N.Y. 2002)). "Almost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional." *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001). Indeed, "[t]he Supreme Court . . . observed that 'almost all laws . . . pass rational basis scrutiny.'" *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 925–26 (W.D. Mich. 2009) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008)). And, we have echoed this recognition when we observed that "challenges to a statute or rule under rational basis review rarely succeed." *Cuomo,* 247 W. Va. at 333, 880 S.E.2d at 55. Here, there is a rational basis for the adoption-guardianship rule because it advances a legitimate governmental interest of equal opportunity for sports teams by ensuring student athletic talent is not artificially concentrated in one sports team. I think that weighing the *Hoover* factors—most especially considering that the circuit court clearly erred as a matter of law in finding the adoption-guardianship rule impermissible—compels the conclusion that the writ should have issued.

For the foregoing reasons, I respectfully concur, in part, and dissent, in part, to the memorandum decision issued in this case. I am authorized to state that Judge Hoxie joins me in this concurrence and dissent.